[Civ. No. 19010.   Second Dist., Div. One.   Aug. 28, 1952.]

BARNEY R. MORRIS, Appellant, v. HARBOR BOAT BUILDING COMPANY et al., Respondents.

Gustave L. Goldstein for Appellant.

R. D. Sweeney and John L. Mace for Respondents.

DORAN, J.—The plaintiff has appealed from a judgment on the pleadings rendered in an action to recover damages for fraud. On May 16, 1949, appellant Morris entered into a written contract with respondents Harbor Boat Building Company, and Dair N. Long and Associates, for the purchase of a "Harco 40 Cruiser" with certain special equipment, the total purchase price being $30,215, which was paid by Morris to the respondents.

The complaint alleges that "at the time the aforementioned contract was entered into . . . and prior thereto, the defendants, their agents, servants and employees, for the purpose of inducing plaintiff to enter into said contract and obligate himself thereby . . . among other things, represented to plaintiff that the aforementioned boat Harco 40 Cruiser 'Karimore II' . . . was capable of, and would attain and maintain, a speed of 36 miles per hour and at that speed had a cruising range of 250 miles." It is also alleged that "plaintiff made known to defendants that he was interested in the purchase of said boat as an express cruiser and would buy same only if said boat could and would attain and maintain" such speed and cruising range; "that otherwise he was not interested in buying, nor would he buy, said boat"; that "defendants and each of them were power boat ex-

perts of long experience in that field," and that defendants' statements "were not mere expressions of hope or layman opinions but were representations of fact upon which plaintiff was entitled to and did believe, rely and act."

Other allegations are that after taking delivery, appellant found "that said boat never was capable of, nor did it ever attain, a speed of 36 miles per hour or a cruising range of 250 miles," but that the maximum speed ever attained was 28.32 miles per hour with a maximum average speed of only 20 miles per hour, and an average cruising range of 175 miles. The other customary allegations of fraud appear in the complaint. The prayer is for "the difference between the actual value of the property with which plaintiff parted and the actual value of that which he received," namely $15,-237.53, and exemplary and punitive damages of $15,000.

The answer denied the alleged fraud and the making of "any representations to the plaintiff other than those which are set forth in said agreement, Exhibit 'A' attached hereto, and particularly the warranty contained therein." By way of affirmative defense, the answer avers that the complaint does not state a cause of action, and that "it is the intention of these defendants at the time of trial herein to move the Court to exclude any evidence offered on behalf of the plaintiff without further notice." A second affirmative defense calls attention to a contract clause providing that "When accepted by the purchaser, the seller, and the Harbor Boat Building Co., this order shall constitute the entire agreement . . . and no other agreements, written or oral, shall apply to this contract except the standard *Harco 40 warranty printed on the reverse side.*" (Respondents' italics.)

As a third affirmative defense respondents state that "the current and only literature that defendants, or any of them had published or used . . . consisted of a four page pamphlet" containing a paragraph entitled "PERFORMANCE," setting out a schedule of engine horsepowers, maximum speeds, and cruising ranges, which gives the "Maximum Speed" of "2—225 H.P." (the engine in question) as 36 M.P.H. and its "Cruising Range" 250 miles. Following this schedule is the following parenthetical statement, "(Speeds and cruising ranges given, although not guaranteed are based on actual trial data and the performance of individual boats may be expected to vary somewhat." It is then alleged that "plaintiff purchased special equipment" weighing "approximately one ton, which added weight will and does af-

fect the speed and cruising range,'' which facts were known to the plaintiff.

A fourth affirmative defense alleges that the respondent Dair N. Long and Associates were not agents, servants, or employees of the Harbor Boat Building Company and had no authority to make any representations. A further affirmative defense alleges that ''plaintiff has carelessly and negligently maintained said Harco 40 Cruiser,'' which rendered the boat incapable ''of developing the maximum speed to which said Harco 40 Cruiser would have developed,'' otherwise.

The case was noticed as a jury trial, and in the absence of the jury and before any evidence had been offered, respondents' attorney moved ''for a judgment on the pleadings, provided that, in order to make the record certain here, Mr. Turnbull will stipulate . . . that the entire contents of the written contract, Exhibit A annexed to the answer, is before the court for the purpose of this motion.'' The appellant's counsel did so stipulate. In connection therewith, Mr. Turnbull, appellant's counsel, stated, ''There was only one contract between the parties, but I wouldn't want to limit myself to the fact that these representations of fact were not in writing.'' Respondents' attorney then stated, ''I don't want to bar him by this stipulation from relying on literature in the trial, if the trial ensues. . . .'' Mr. Turnbull then stated, ''That's right. The reservation I made was that part of the inducement made to sign that contract were representations in writing,'' to which respondents' attorney replied, ''I understand that you so claim, and I do not by this stipulation bar you from that claim.'' The motion was then argued, and the court said, ''I will have to grant this motion for judgment on the pleadings.''

The judgment entered thereon, after reciting the above stipulation, states that ''after considering the arguments of counsel, the pleadings and the facts herein set forth, and it appearing to the court and the court finds that no evidence is adimissable to prove the false representations alleged . . . It Is Hereby Ordered, Adjudged and Decreed that plaintiff take nothing . . . and that the defendants have judgment against plaintiff.'' The present appeal is from this judgment.

Appellant's first point is that a motion for judgment upon the pleadings is, in effect, a general demurrer to the complaint, and that since the complaint herein states a cause

of action, the trial court should have denied such motion.
■ As appellant avers, "There is ample authority for this statement," as evidenced by the case of *Davis* v. *City of Santa Ana,* 108 Cal.App.2d 669, 685 [239 P.2d 656], where the court says: "A motion by defendant for judgment on the pleadings operates as a general demurrer to the complaint, and the averments of the complaint, for the purposes of the motion, must be taken as true." And in *Gill* v. *Curtis Publishing Co.,* 38 Cal.2d 273, 275 [239 P.2d 630] (Jan. 1952), it is said that where a judgment on the pleadings has been granted, the case should be reviewed "the same as would be a judgment of dismissal entered following the sustaining of a general demurrer, and the allegations in plaintiff's complaint must be taken as true, and so taken the question is whether a cause of action has been stated."

Seeking to avoid the force of the above rule, respondents' brief suggests that while the motion "was verbally designated a motion for judgment on the pleadings (Rep. Tr. p. 2, line 23), consideration of the entire record discloses that this is an inaccurate appellation." Admitting that "A motion for judgment on the pleadings is not based upon evidence, but solely upon the pleadings," respondents argue that in this case "The motion was either to exclude any parol evidence of the alleged fraud or an objection to any evidence of the alleged fraud and was not, strictly speaking, a motion for judgment on the pleadings." A survey of the record, however, indicates that from first to last the motion in question was never treated as anything but a motion for judgment on the pleadings. The Minute Order of October 19, 1951 records that "Motion for judgment on the pleadings by attorney for defendants is by the Court granted." No question of evidence was before the trial court at that or any other time.

■ Such being the case, it was only incumbent on the trial court to determine whether the complaint, taking its allegations as true, stated a cause of action. ■ That fraud is sufficiently alleged in the complaint can hardly be doubted; there is a definite allegation that the boat purchased was falsely represented to be capable of a certain speed and to have a certain cruising range. And as stated in respondents' brief, "The amended complaint then proceeds to allege the usual allegations required in a fraud action in regard to falsity, intent, reliance, etc." In other words it was a typical and customary complaint alleging the required

elements of fraud and seeking damages therefor. Whether the plaintiff could or could not establish the alleged fraud was no more a matter then before the trial court than are the merits of a case a proper question upon the hearing of a demurrer. The trial court was obliged to accept as true the facts alleged in the complaint, and to proceed with the trial if a cause of action was stated.

The reason given in the judgment for sustaining the motion, namely that the court believed ''that no evidence is admissable to prove the false representations alleged,'' was no reason at all, since no evidence had been offered. No question of evidence was before the trial court, and the only matter pending was a determination as to whether the complaint stated a cause of action. The appellant was therefore improperly precluded from presenting any evidence as to the alleged fraud. Respondents' present claim that the motion was something other than for judgment on the pleadings finds no support in the record.

Respondents rely on the proposition that ''Where the parties have reduced the subject matter of their agreement to writing, parol evidence is inadmissible to add additional warranties, or to prove a representation directly at variance with the terms of the writing.'' This is the basic rule as expressed in section 1856 of the Code of Civil Procedure, but the same section then enumerates two definite exceptions where parol evidence is admissible, namely ''Where a mistake or imperfection of the writing is put in evidence,'' and ''Where the validity of the agreement is the fact in dispute,'' the latter exception being the situation presented in the instant case. To further clarify the matter, section 1856 then expressly provides that the rule does not exclude extrinsic evidence offered ''to establish illegality or fraud.''

An examination of the pleadings herein discloses that plaintiff is claiming no additional warranty and is not attempting to vary the terms of a written instrument. The claim is simply that by reason of certain fraudulent representations the purchaser of a boat was induced to execute a contract which otherwise would not have been entered into. This is no uncommon situation and is obviously the one contemplated by the foregoing exception to the parol evidence rule. Indeed, without such an exception a victim of the most aggravated fraud would be entirely helpless.

The nature of fraud, as noted in appellant's brief, is such that one hardly expects to find it set out in black and white

in a contractual instrument. Rather, the matter is elusive and insidious in nature, and one which, in most cases, can only be established by parol or extrinsic evidence. As said in Wigmore on Evidence, 3d ed., section 2439, "The explanation seems to be that the vital element in fraud is the party's state of mind, which neither can be nor is intended to be embodied in the written document, and that hence the rule does not forbid considering it whenever it is the vital element of the claim." Innumerable cases recognize the exception here under discussion, such as *Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134 [179 P.2d 380], cited by both parties hereto, where the reviewing court reiterates that the parol evidence rule "does not preclude oral evidence of material misrepresentations constituting fraud which render the contract void from its inception."

Respondents' brief lays much stress on such cases as *Bank of America* v. *Pendergrass*, 4 Cal.2d 258 [48 P.2d 659], holding that where a promissory note contains an unconditional promise to pay, the parol evidence rule will prevent the maker from showing that the payee orally promised that payment need not be made until the money came in from a certain source. No such situation exists in the instant controversy, and this line of cases is of no assistance. The same may be said in respect to *Oxnard Theatres, Inc.* v. *Paramount Pictures, Inc.*, 24 F.Supp. 44, which involved an unsuccessful attempt to prove certain oral promises made without an intention to perform, where the written agreement specifically covered the matter at issue. The present case does not involve any oral promise to do anything. Moreover the alleged misrepresentations involve a matter about which the written instrument is silent. The contract says nothing whatsoever about speed or cruising range of the boat sold. Moreover, the printed prospectus, hereinbefore referred to, does mention the very speed and cruising range which appellant claims was the inducing representation resulting in execution of the contract.

As stated in appellant's brief and in various cases, "it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud." And this is true, "even though the contract recites that all conditions and representations are embodied therein," (*Ferguson* v. *Koch*, 204 Cal. 342, 347 [268 P. 342, 58 A.L.R. 1176]), as it did in the instant case. To adopt the respondents' inter-

pretation of the law would quite effectively tie the hands of a fraud victim if not practically do away with the defense itself. This is the pitfall which the statutory expression of the parol evidence rule, and the stated exception thereto, sought to avoid.

In the present case, appellant adopted one of several remedies open to a fraud victim, as set forth in *Paolini* v. *Sulprizio,* 201 Cal. 683 [258 P. 380], and elsewhere, namely that the plaintiff "may affirm the contract, retain what he has received, and sue for his damages in an action for deceit." The measure of damages in such a case is the difference between what the buyer has actually received and that which, except for the fraud, he would have received and had the right to expect to receive. Obviously, it would amount to a direct and complete contradiction to affirm in one breath that a defrauded buyer has the legal right to bring such an action, and then in the next breath to cancel such remedy by quoting the parol evidence rule and excluding the only type of evidence by which fraud could be established. Incidentally, it may be noted that when pursuing this remedy, the plaintiff by no means "affirms" or waives the fraud, as respondents appear to assert, but merely elects to retain what he has received, seeking reimbursement for the difference in value by way of a money judgment against the seller.

Respondents further insist that under the contract warranty, it was appellant's duty to "return the defective parts for rectification," which appellant did not do. The answer to this is that the complaint makes no allegation in respect to "defective parts," but seeks to recover the damages resulting from such fraud. This is merely another example of the fundamental error of respondents' position, the issue raised by the complaint is not concerned with warranties or express contract provisions. The issue before the trial court was simply whether the complaint stated a cause of action for fraud which would vitiate the written contract.

It is not meant by this decision to express or imply any opinion as to whether plaintiff could or could not establish the allegations of fraud. Again, it may well be that some or all of the evidence offered by the plaintiff at a trial might prove to be inadmissible for one reason or another, a matter which cannot be determined in advance of a trial and an actual offer of evidence. It is clear, however, that a trial court has no authority to determine matters of ad-

missibility of evidence on the hearing of a motion for judgment on the pleadings as was done in the instant case.

The judgment is reversed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied September 15, 1952. Respondents' petition for a hearing by the Supreme Court was denied October 23, 1952.