APLICATIONS INC., Plaintiff,

v.

**HEWLETT–PACKARD CO., Defendant.**

**No. 77 Civ. 5937 (RLC).**

United States District Court,
S. D. New York.

Oct. 20, 1980.

---

Rosenberg, Rosenberg & Ehrlich, Garden City, N. Y., for plaintiff; Joseph B. Ehrlich, Garden City, N. Y., of counsel.

Sullivan & Cromwell, New York City, for defendant; Michael A. Cooper and Nadine Strossen, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Hewlett–Packard Co. ("H–P") moves for summary judgment on the claims of plaintiff APLications, Inc. ("APLications") for fraudulent misrepresentation, negligent misrepresentation, and breach of warranties, express and implied, and on plaintiff's claim for consequential damages. Judgment is granted on the claim for breach of express and implied warranties, but otherwise denied.

*FACTS*

This matter from the bright new frontier of small–scale computers was previously before this court when plaintiff's motion for summary judgment on its claims was denied,[1] and the facts may be briefly recounted. H–P developed and marketed the computer language subsystem APL/3000 for use on its HP 3000 Series II computers. APL is prized as a computer language for its elegance and flexibility. (*See e. g.* May 24, 1979, Affidavit of Chester Sherer, Plaintiff's Memorandum in Opposition) However, the language also taxes the computer's resources: theretofore, attempts at adapting APL to small–scale computers had not proven acceptably responsive (*id.*, p. 2), and its use had been confined to larger, more expensive systems. If APL/3000 in fact was able to provide acceptable performance on a less expensive computer, it would constitute an important innovation in the field.

Plaintiff APLications adapts and resells computers, with software of its own design, to the ultimate user of the computer system. When APL/3000 was announced in the fall of 1976, APLications was in the early stages of negotiating the sale of a system to American Field Services ("AFS"). Responding to H–P's announcement and accompanying brochures APLications contacted H–P about using APL/3000 in the proposed system for AFS. Representatives from APLications and AFS met through January of 1977 to negotiate the deal, and representatives of H–P attended a number of these discussions.

On February 1, 1977, APLications and H–P entered into a written "OEM Purchase Agreement" ("Agreement") under which APLications would be entitled to a discount on H–P equipment purchased for adaptation and resale. APLications ordered a 3000/Series II computer in March, 1977, programmed in APL/3000, and other hardware, to be delivered directly to AFS. When the computer was installed and initially tested, however, it was determined that AFS's needs could not be met with the machine as programmed: response time in APL/3000 was unacceptably long. The computer has since been reprogrammed in another language and is now performing acceptably for AFS.

APLications contends that it relied on H–P's claims about APL/3000 performance in contracting with AFS, and in reorienting its business. In APLications' eyes, H–P represented–to the industry in general, and to APLications and AFS in particular–that APL/3000 would provide "fast response even with multiple users" (H–P Brochure, "Total Solution APL," Affidavit of Jean Denver, Ex. A, Defendant's Affidavits in Support of Motion), as was required by AFS. APLications claims to have lost profits on its contract to AFS, as well as on other possible adaptation and resale contracts, and to have suffered damage to its business reputation, which supposedly resulted from its reliance on H–P's representations.

H–P, for its part, insists that its statements about APL/3000 were generalized statements or "puffing," and were not to be relied on. Further, H–P points to the terms of the Agreement, as precluding any warranties that might have been breached, as well as reliance by APLications on other statements.

That Agreement contains the following warranty section:

1. 77 Civ. 5937 (RLC) (August 6, 1979).

## 5. WARRANTY

HP products are warranted against defects in materials and workmanship. This warranty applies for ninety (90) days following delivery. For products installed by HP this warranty period shall commence upon installation or the 31st day following shipment whichever occurs first. During the warranty period, HP will at its option, repair or replace products which prove to be defective.

Necessary travel will be provided at no charge to locations served regularly by transportation within countries where HP has Computer Systems service facilities. However, the following products must be returned to HP at Buyer's expense 'for warranty repair or replacement: 3070A, 3071A, 2103K, 2649A, and their associated accessories.

NO OTHER WARRANTY IS EXPRESSED OR IMPLIED. HP SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. HP IS NOT LIABLE FOR CONSEQUENTIAL DAMAGES.

Among the other terms and conditions of the Agreement are:

## 12. MISCELLANEOUS

\* \* \* \* \* \*

b. It is understood and agreed that the attached agreement and exhibits contain the entire understanding between the parties relating to the subject matter hereat and that any representation, promise, or condition not contained herein shall not be binding on either party.

c. The terms and conditions contained in the attached agreement and exhibits shall take precedence over any standard terms and conditions which appear on Buyer's order issued hereunder or any documents incorporated by reference.

\* \* \* \* \* \*

f. This agreement shall be in all respects governed by the laws of the State of California.

**2.** The Agreement so states. However, both sides' papers are replete with discussions of

## BREACH OF WARRANTIES

APLications argues that the computer was impliedly warranted for merchantability and fitness for the purpose of use by AFS, and that an express warranty was created by H–P's statements. H–P stands on the limitation of warranty in the Agreement and argues that no warranty, express or implied, is enforceable against H–P for plaintiff's losses. As will emerge, the undisputed facts, together with the applicable law, compel judgment for defendant on this issue.

The Agreement proclaims that it shall be governed by the laws of California. (Section 12. f., *supra* ) Each party has affirmed this provision,[2] and it is to that law that we turn to resolve this question.

 Under California law, as elsewhere, the contract must be interpreted to give effect to the intentions of the parties. *Ogburn v. Travelers Insurance Co.*, 207 Cal. 50, 276 P. 1004 (1929); *Healy Tibbits Const. Co. v. Employer's Surplus Lines Ins. Co.*, 72 Cal.App.3d 741, 748, 140 Cal.Rptr. 375, 379 (1977); *Cal.Civ.Code* § 1636. When a contract is reduced to writing the parties' intent should be ascertained from the written instrument, *Sayble v. Feinman*, 76 Cal. App.3d 509, 514, 142 Cal.Rptr. 895, 898 (1977), *General Cas. Co. of America v. Azteca Films, Inc.*, 278 F.2d 161 (9th Cir. 1960), *cert. denied*, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85, *Cal.Civ.Code* § 1639, for the execution thereof supersedes prior negotiations and stipulations. *Palos Verdes Corp. v. Housing Authority of Los Angeles County*, 202 Cal.App.2d 827, 836, 21 Cal.Rptr. 225, 231 (1962), *Cal.Civ.Code* § 1625. When the parties agree to a written contract as a "complete and final embodiment of the terms of the agreement," *Masterson v. Sine*, 68 Cal.2d 222, 224, 65 Cal.Rptr. 545, 547, 436 P.2d 561, 563 (1968), the writing is an integration of the agreement, and parol evidence may not be used to vary its terms.

New York law. *See infra*, note 4.

*Id.* Similarly, when only part of the agreement is integrated, parol evidence may not vary that part. *Id.* The determination as to whether a writing integrates the parties' understanding is for the court. *Brawthen v. H & R Block, Inc.,* 28 Cal.App.3d 131, 137, 104 Cal.Rptr. 486, 490 (1st Dist. 1972); *Cal. Code Civ.Proc.* § 1856(d).

■ The Agreement plainly states that it contains the entire understanding between the parties, and plaintiff has raised no genuine issue about the parties' agreement with respect to warranties. There is no dispute that the parties bargained for and signed the Agreement, including the section on warranties; nor is there any question that APLications was aware of the significance of that section and intended it to be a part of the contract. Plaintiff's only suggestion to the contrary comes by way of a remark that the contract "can be construed as one of adhesion." (Plaintiff's Memorandum in Opposition, p. 25) Whatever the truth of that suggestion as a matter of legal possibility, plaintiff has provided no factual predicates for such a construction of this contract.[3] Accordingly, we must regard the Agreement's warranty section as the "complete and final embodiment" of the parties' agreement on warranties and find that the Agreement fully integrated the understanding between them on that issue. Therefore, if the limitations on warranties are effective under the relevant provisions of the California Commercial Code, which govern contracts for sales of goods, no warranties are enforceable against H–P other than those included in the Agreement for defects in materials and workmanship.

■ With respect to implied warranties, § 2316(2) of the California Commercial Code provides:

Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Clearly, the Agreement's exclusion satisfies all these criteria: it is written and conspicuous, and it mentions merchantability. Indeed, if contracting parties may ever agree under the Code to exclude implied warranties of merchantability and fitness, then the language of the instant provision is surely effective. The implied warranties asserted by plaintiff are not enforceable against H–P, and consequently, defendant's motion must be granted to this extent. *American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976) (Carter, J.).

The same result must be reached on the issue of express warranties. Plaintiff does not assert that the computer's material or workmanship were in some way defective. Instead, plaintiff contends that an express warranty was created by defendant's descriptions of the computer. *See Cal.Com. Code* § 2313(1)(a), (1)(b). The Agreement excludes this warranty as well. While there are no particular requirements under the Code to limit express warranties or liability, the Code contemplates that such limitations may be undertaken by the parties. *See id.,* §§ 2316(1), 2316(4), 2719; *S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1370 (9th Cir. 1978) (applying California law). The instant limitation is categorical and unambiguous, and limitations nearly identical in language to this provision have frequently been upheld. *See e. g. Investors Premium Corp. v. Burroughs Corp.,* 389 F.Supp. 39, 44–45 (D.S.C.1974);

---

**3.** Plaintiff's only allegation in support of this suggestion is the claim that "there was nowhere the same extensive negotiation" as obtained in *American Electric Power Corp. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976) (Carter, J.). Since plaintiff never contends that the parties were in any way prevented from negotiating the terms of the contract to their full satisfaction, the paucity of negotiation indicates that the warranty provision was acceptable to both parties.

Westfield Chemical Corp. v. Burroughs
Corp., 21 UCC Rep.Serv. 1293, 1295 (Mass.
Super.Ct. Hampden Co.1977); Bakal v. Bur-
roughs Corp., 74 Misc.2d 202, 343 N.Y.S.2d
541 (S.Ct.1972). Therefore, the Agreement
effectively excludes the express warranties
for which plaintiff contends, and defend-
ant's motion must, in this respect be grant-
ed.

### FRAUDULENT MISREPRESENTATION

H–P avers that granting summary judg-
ment on the issue of warranties must pre-
clude plaintiff's claim for fraudulent mis-
representation, lest the policies behind the
parol evidence rule be frustrated. Defend-
ant also contends that the undisputed facts
compel a grant of summary judgment on
the question of fraud. While defendant's
factual contentions appear in many respects
to be convincing, it cannot be concluded
that no issues of fact obtain with respect to
the claim of fraudulent misrepresentation
or that APLications should be precluded
from maintaining that claim.

Contrary to defendant's argument
(Defendant's Memorandum in Support of
Motion, pp. 24–28) the parol evidence rule
does not dictate that summary judgment be
entered against plaintiff on the claim of
fraud.[4] As this court in Horwitz v. Spra-
gue, 440 F.Supp. 1346, 1350 (S.D.N.Y.1977)
(Tenney, J.) made clear, fraud is a magic
word, and it is

> elementary that any contract can be put
> aside for fraud... By casting this com-

4. H-P cites a number of cases for the proposi-
tion that plaintiff's claim for fraudulent misrep-
resentation is precluded: Perma Research and
Development Co. v. Singer, 410 F.2d 572 (2d
Cir. 1969); Investors Premium Corp., supra;
Potomac Electric Power, supra; and Westfield
Chemical Corp., supra. This contention is
without merit. In the first place, H–P mistakes
the import of these cases: fraud was not prop-
erly alleged, and those particular claims were
dismissed, but no infirmity was found in main-
taining a separate and distinct count for fraud-
ulent misrepresentation together with a count
for breach of warranties. In the second place,
defendant's contention would elide the distinc-
tiveness of the claims for the sake of the parol
evidence rule, ignoring the fact that each action
requires particular elements of proof. See e. g.

plaint in tort, i. e., fraud, plaintiff has
avoided the perils of the parol evidence
rule which would likely bar oral evidence
to vary the terms of so explicit an instru-
ment as [is at issue].

See also Plum Tree, Inc. v. N.K. Winston
Corp., 351 F.Supp. 80, 85 (S.D.N.Y.1972)
(Gurfein, J.):

> The plaintiff sues not for any breach of
> contract but for injuries suffered as a
> result of the defendant's conduct which is
> separate and distinct from the formal
> contract. Consequently, a party seeking
> to prove fraudulent inducement may in-
> troduce evidence which has the effect of
> varying the terms of a written contract,
> the parol evidence rule notwithstanding.

This conclusion is unaffected by the
statement in Section 12.b of the Agreement
that representations not contained in the
Agreement shall not be binding on the par-
ties. In both California and New York, it is
clear that a properly maintained action for
fraud may overcome the policies behind the
parol evidence rule,[5] even with respect to
contracts that disclaim reliance on represen-
tations not contained in the written instru-
ment.

> It was never intended that the parol evi-
> dence rule should be used as a shield to
> prevent the proof of fraud ... And this
> is true even though the contract recites
> that all conditions and representations
> are contained therein.

Ferguson v. Koch, 204 Cal. 342, 347, 268 P.
342, 345 (1928); Morris v. Harbor Boat

Ajax Hardware Mfg. v. Industrial Plants, Corp.,
569 F.2d 181, 187 (2d Cir. 1977).

5. While the Agreement expressly stipulates
that California law shall govern, the parties
have referred to New York, as well as Califor-
nia law on fraudulent misrepresentation. For
the purposes of this branch of the motion, it is
sufficient to note that the conclusions reached
are valid regardless of which state's law is
ultimately found to govern. The only differ-
ence that arises in the case at hand is that New
York, but apparently not California, supports a
distinction between specific and general dis-
claimers of reliance. However, as footnote 6,
infra, makes clear, the conclusions reached
herein are in accord with California law, not-
withstanding the doctrinal difference just not-
ed.

*Building Co.*, 112 Cal.App.2d 882, 247 P.2d 589 (2d Dist. 1952); *Bell v. Exxon Co., U. S. A.*, 575 F.2d 714 (9th Cir. 1978) (applying California law); *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959).[6]

In sum, plaintiff's cause of action for fraudulent misrepresentation must be evaluated for the purposes of this motion as a separate and distinct claim, summary judgment on breach of warranties notwithstanding. That is, plaintiff's claim for fraud must be evaluated in terms of the applicable law concerning the elements of

that cause. *See U. S. v. Franklin Bank*, 376 F.Supp. 378 (E.D.N.Y.1973), *Horwitz v. Sprague, supra.*˙ With respect to those elements, defendant further contends that plaintiff has failed to establish two requisites in particular: defendant contends that the misrepresentations plaintiff alleged defendant to have made were not statements of specific, material facts, and that plaintiff's reliance on these statements was not justified.

However, resolving all ambiguities and drawing all reasonable doubts and inferences in favor of the plaintiff, as we must, *United States v. Diebold, Inc.*, 369 U.S. 654,

---

**6.** Defendant has cited two cases to indicate that the contrary should be concluded in light of the Agreement's disclaimer clause. *See Fisher v. Pennsylvania Life Co.*, 69 Cal.App.3d 506, 138 Cal.Rptr. 181 (2d Dist. 1977), and *Carter Group, Inc. v. Sosnow*, 35 A.D.2d 699, 314 N.Y.S.2d 713 (1970). These cases are inapposite. *Fisher, supra* involves the California statute governing the release of obligations, *Cal.Civ.Code* § 1542. Whatever the applicability of this statute to the instant matter, *Casey v. Proctor*, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 (1963) on which the *Fisher* court relies, makes it clear that a general release must be shown to be intended specifically to release those claims against which the release is asserted. 28 Cal.Rptr. at 314, 378 P.2d at 586. Mere recital of a waiver is not controlling, and the intended coverage of the release is ultimately a question of fact. *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 163 Cal.Rptr. 711 (1st Dist. 1980). Defendant has not demonstrated the absence of any issue of fact on this question. At any event, the applicable law in California with respect to the significance of fraud is clear. *Ferguson v. Koch, supra; Bell v. Exxon, supra.*

Similarly for *Carter Group, supra.* New York cases distinguish between specific and general disclaimers of reliance on representations. *See Danann Realty, supra*, 184 N.Y.S.2d 599, 602, 157 N.E.2d 597, 599; *Vesey Associates, Inc. v. Regime Corp.*, 35 Misc.2d 353, 232 N.Y.S.2d 754 (1961). A general disclaimer clause, as is found in the Agreement, will not bar an action for fraud in the inducement of a contract. *Crowell–Collier Publishing Co. v. Josefowitz*, 5 N.Y.2d 998, 184 N.Y.S.2d 859, 157 N.E.2d 730 (1959).

This conclusion is supported by another line of argument which need only be outlined here. The maxims of contract construction dictate that the provision in the Agreement stating that "any representation... not contained in the Agreement shall not be binding," (Sec. 12.-

b.) is to be disregarded. The contract is to be construed as a whole. *See e. g. Cal.Civ.Code* § 1641. However, the Agreement cannot be regarded as the whole of the˙contract. The Agreement sets the conditions under which plaintiff was to place orders for H–P's products, and the discount on those products, but listed no quantities or prices. Orders by plaintiff were to be placed under the Agreement. *See* March 8, 1977 letter of Kenneth David (Affidavit of John J. Greene III, Ex. C, Defendant's Affidavit in Support). Thus, the Agreement implies that plaintiff's orders under the Agreement are included in the contract as a whole. *See e. g. Cal.Civ.Code* § 1656. The terms of the Agreement imply this as well. Section 12.c., *supra*, contemplates that orders placed under the Agreement might include additional terms or conditions. The disclaimer of any representations that is found in Section 12.b. of the Agreement, then, must be subordinated to the contract as a whole, *see e. g. Cal.Civ.Code* § 1650, and the disclaimer of representations therein disregarded. *Id.* § 1652. Moreover, the Agreement makes no representation or description whatever of H–P's products which plaintiff might order, and the particular computer that was in fact ordered (the Model 8, HP 32418A) was not even included in the list of H–P products attached to the Agreement. It is patent, then, that at least some representations about H–P's product are essential to the contract but are nonetheless not a part of the Agreement. Else, the plaintiff is in the absurd position of contracting to purchase an unidentified, undescribed computer, whose specifications are nowhere stated or referred to in the contract. The Agreement, therefore, is not a complete embodiment of the parties' understanding. *Cal.Civ.Code* §§ 1652, 1653, 1656. Summary judgment on the issue of fraud depends on whether, among the statements made by defendant extrinsic to the Agreement are some of specific material facts on which plaintiff could justifiably rely.

655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975), material factual issues remain to be resolved at trial. Plaintiff has raised a genuine issue concerning H–P's representations of the capabilities of APL/3000, most significantly concerning the representations in H–P's brochures of the system's responsiveness in a multiple user configuration. By the same token, triable issues arise with respect to plaintiff's reliance on H–P's statements, focusing on APLication's opportunities to test the system's capabilities in a manner adequate to assess its suitability for the contract with AFS.

None of this, of course, is to suggest that plaintiff will necessarily ultimately prevail on the merits. H–P has set forth a detailed and lengthy account of the parties' dealing, and plaintiff's burden at trial appears formidable. For the purposes of this motion, however, the court is bound to accept as true plaintiff's allegations, *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 629 (2d Cir. 1972), and defendant has not demonstrated an absence of material issues of fact genuinely in dispute. Consequently, summary judgment on plaintiff's claim of fraud must be denied. *See American Elec. Power, supra*, 418 F.Supp. at 451–452.

*NEGLIGENT MISREPRESENTATION*

As defendant acknowledges (Defendant's Memorandum in Support of Motion, p. 49), the essential elements of plaintiff's cause for negligent misrepresentation are the same as for fraud, except that plaintiff need not establish that H–P made false statements with knowledge of their falsity. *E. g. Walters v. Marler*, 83 Cal.App.3d 1, 18, 147 Cal.Rptr. 655, 664–65 (1st Dist. 1978). Defendant's motion for summary judgment on the question of negligent misrepresentation must be denied as well.

*DAMAGES*

■ Defendant also argues that under the Agreement and as a matter of law plaintiff may not recover consequential damages. Since summary judgment is

granted on the issue of breach of warranties, there is no need to reach the issue of consequential damages under the Agreement. However, if plaintiff's claims for fraudulent misrepresentation is heard at trial, the contractual limitation precluding recovery of consequential damages is ineffective. *American Elec. Power, supra*, 418 F.Supp. at 460. The Uniform Commercial Code provides in both California and New York that remedies for fraud may include consequential damages, §§ 2–721 and 2–715, with respect to contracts covered by its sections. The issue of consequential damages cannot be resolved at this time, and this branch of defendant's motion is accordingly denied.

IT IS SO ORDERED.