**In re Eugene Francis STEWART, Debtor.**

**Richard B. BERK, Plaintiff,**

**v.**

**Eugene Francis STEWART, Defendant.**

**Bankruptcy Nos. 79–25361–JD, 80–8776–JD.**

United States Bankruptcy Court, C. D. California.

April 2, 1981.

Harvey R. Friedman, Carol A. Francone, Greenberg & Glusker, Los Angeles, Cal., for plaintiff.

Andrew F. Leoni, Slate & Leoni, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

JAMES R. DOOLEY, Bankruptcy Judge.

In this action plaintiff seeks to have defendant's debt to him determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), which excepts from discharge any debt:

"(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;"

Plaintiff contends that he was induced to enter into a Stock Purchase Agreement with the Gene Stewart Corporation (hereinafter "GSC") and thereby transfer his insurance business to GSC because of false representations made by the defendant as follows:

(1) Oral representations to the effect that GSC had applied for a loan of $300,000 and that this loan would be granted;

(2) A written representation contained in paragraph 7.3 of the Stock Purchase Agreement that "Gene Stewart and Gary Martin are the record and beneficial owners of all of the issued and outstanding shares of Buyer".

## FACTS

On February 4, 1977 a Stock Purchase Agreement was entered into between GSC as Buyer and one Jason Groode and plaintiff as Sellers; and this purchase was closed on February 4, 1977 or shortly thereafter. The Stock Purchase Agreement provided, *inter alia*, for the purchase by GSC of all of

the issued and outstanding capital stock of Jason D. Groode Enterprises and the payment by GSC to plaintiff of a total purchase price of $100,000. Among the documents which were executed in connection with the closing of the Stock Purchase Agreement, in addition to the latter agreement itself, were the following:

1. A Promissory Note dated February 4, 1977 in the principal sum of $100,000, with interest at 7½% per annum, principal and interest payable in installments of $25,000 and accrued interest on March 1, 1977 and November 1, 1977; thereafter, the remaining principal and interest to be payable in twenty-four equal monthly installments on the first day of each month beginning December 1, 1977. This Promissory Note was signed by defendant as President of GSC and by one Gary A. Martin as Vice President of GSC.

2. A Guarantee, signed by defendant and Gary A. Martin as individuals, guaranteeing the "due and punctual payment of any indebtedness of Buyer to Berk ..." and the "performance of all of the obligations of Buyer under the Stock Purchase Agreement, including the obligations of Buyer pursuant to the Promissory Note, the Pledge Agreement and the Security Agreement executed pursuant to the terms thereof". This Guarantee also recited, *inter alia*:

"2.2 Berk would not have entered into the Stock Purchase Agreement unless Guarantors guaranteed payment and performance of the terms thereof."

3. A Stock Pledge Agreement between GSC and plaintiff in which GSC apparently pledged and delivered to plaintiff as security all of the shares of Jason D. Groode Enterprises that GSC was purchasing under the Stock Purchase Agreement.

4. A Security Agreement between plaintiff and GSC in which GSC granted to plaintiff a security interest in all of the assets of GSC and its subsidiaries.

None of the written documents which were executed in connection with the closing of the Stock Purchase Agreement referred to the alleged oral representations by defendant that GSC had applied for a loan and that the loan would be granted.

GSC failed to pay the installment of principal and interest which became due on March 1, 1977. Thereafter, plaintiff's counsel drafted a forbearance agreement in the form of a letter dated April 14, 1981, which, after some changes, was signed by defendant and Gary A. Martin, both individually and as officers of GSC, and was agreed and accepted by plaintiff. Among other things, the letter stated:

"... We realize that we had informed you that Gene Stewart Corporation had a loan pending with Wells Fargo Bank, when in fact no loan application had as yet been filed. However, a loan application has been filed with Wells Fargo Bank on April 11, 1977 and should be approved within the next three to six weeks."

GSC's loan application was never approved. On September 29, 1978 summary judgment was entered in favor of plaintiff and against the defendant in the Los Angeles County Superior Court, Action No. C 235 260. This judgment decreed that "... plaintiff Richard B. Berk recover from defendant Eugene Stewart the sum of $88,-238.36, interest thereon to the date hereof in the sum of $3,640.02, for a total judgment of $91,878.38 with plaintiff's costs and disbursements amounting to the sum of $8,629.10 together with interest on said judgment as provided by law."

### LIABILITY OF THE DEFENDANT

■ At the outset it should be noted that exceptions to the operation of a discharge in bankruptcy should be narrowly construed. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Danns v. Household Finance Corp.*, 558 F.2d 114, 116 (2d Cir. 1977); *In re Harlan*, 7 B.R. 83, 85 (Bkrtcy.D.Ariz.1980); *In re Nichols*, 6 B.R. 842, 845 (Bkrtcy.D.Maine 1980); *In re Green*, 5 B.R. 247, 249 (Bkrtcy.N.D.Ga.1980).

■ In an action under Section 17(a)(2) of the Bankruptcy Act of 1898, as amended, the burden was on the party challenging

the discharge of a particular debt to prove all of the elements of actual or positive fraud. Cf. *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978); *Matter of Nelson*, 561 F.2d 1342, 1346 (9th Cir. 1977); *Wright v. Lubinko*, 515 F.2d 260 (9th Cir. 1975); *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975); *Sanitation Recycling, Inc. v. Jay Peak Lodging Ass'n, Inc.*, 428 F.Supp. 1022 (D.C. Vt.1977); *In re Knight*, 421 F.Supp. 1387, 1390–1391 (M.D.La.1976), affirmed without published opinion, 551 F.2d 862 (5th Cir. 1977); *In re Dolnick*, 374 F.Supp. 84 (N.D. Ill.1974). The same rule is applicable in construing Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). *In re Harlan, supra; In re Schlickmann*, 6 B.R. 281, 282 (Bkrtcy.D.Mass.1980); *Matter of Ratajczak*, 5 B.R. 583, 586 (Bkrtcy.M.D.Fla. 1980); *In re Ashley*, 5 B.R. 262, 263–264 (Bkrtcy.E.D.Tenn.1980). The elements required to be proved are as follows (see *Matter of Nelson, supra* at p. 1346; see also *In re Harlan, supra* at p. 85):

(1) The debtor made the representations;

(2) That at the time he knew they were false;

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations; and

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

### Oral Representations

■■■ Under 11 U.S.C. § 523(a)(2)(A) it is not necessary that the false pretense or false representation be made in writing in order that the debt may be excepted from discharge. 3 Collier On Bankruptcy, 15th Ed., ¶ 523.08. Nor does the integration clause contained in paragraph 10.2 of the Stock Purchase Agreement[1] prevent a showing of fraud. *Bell v. Exxon Co., U.S.A.*, 575 F.2d 714, 715–716 (9th Cir. 1978); *Morris v. Harbor Boat Building Co.*, 112 Cal.App.2d 882, 888, 247 P.2d 589 (1952); *Ferguson v. Koch*, 204 Cal. 342, 347, 268 P. 342 (1928). However, as to defendant's oral representations, this court has concluded that plaintiff has failed to prove the required elements of intentional fraud.

■■ The evidence concerning defendant's oral representations was contradictory and creates some uncertainty as to precisely what the defendant told plaintiff and plaintiff's attorneys. The court is satisfied, however, that the defendant and Gary A. Martin intended to seek a federally insured loan on behalf of GSC in the amount of approximately $300,000 and to use the proceeds of that loan to help finance the purchase of Jason D. Groode Enterprises and other businesses. The court is also satisfied that before the Stock Purchase Agreement was executed on February 4, 1977 the defendant told plaintiff and plaintiff's attorneys in substance that GSC's application for a loan had been submitted to the Wells Fargo Bank, when in fact the loan application had not been submitted to any bank, but was still being processed at the United Indian Development Association.[2] The court is further convinced that prior to the execution of the Stock Purchase Agreement the defendant used language to plaintiff and to plaintiff's attorneys indicating that he was very optimistic that the loan application would be approved. However, the court does not find that the defendant said at any time that the loan application had already been approved.

1. Paragraph 10.2 of the Stock Purchase Agreement provides in part as follows:

"10.2 This Agreement, together with the letter agreement dated November 7, 1976, between Jason D. Groode, Jason D. Groode Enterprises, Inc., Buyer, Gene Stewart and Gary Martin (which letter agreement shall only affect the rights of the parties thereto), constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties, and there are no warranties, representations or agreements among the parties in connection with the subject matter hereof except as set forth or referred to herein ..."

2. The defendant was Chairman of the Board of the United Indian Development Association.

The court is not persuaded that the defendant made the oral representations to plaintiff and to plaintiff's attorneys with the intention and purpose of deceiving plaintiff. One reason for reaching this conclusion is that the benefit to be gained by the defendant from the alleged deceit is not apparent. Under the Guarantee defendant and Gary A. Martin were to assume individual liability for the entire purchase price of the shares purchased by GSC pursuant to the Stock Purchase Agreement; under the Stock Pledge Agreement, GSC was to pledge and deliver to plaintiff all of the shares purchased; and under the Security Agreement plaintiff was to be granted a security interest in all of the assets of GSC and its subsidiaries. Thus, the closing of the Stock Purchase Agreement gave GSC nothing that it could not be immediately deprived of on default[3], and substantially increased the individual liability of the defendant.

■ Nor does the court find the necessary reliance. Under 11 U.S.C. § 523(a)(2)(A) plaintiff must prove that reliance was reasonable. *In re Ashley*, 5 B.R. 262, 266 (Bkrtcy.E.D.Tenn.1980). Assuming that plaintiff in fact relied upon defendant's oral representations as to the future approval of GSC's loan application[4], such reliance was not reasonable, particularly since plaintiff was represented by counsel. Plaintiff's counsel were undoubtedly aware that difficulties might arise in the approval of GSC's application for a bank loan, especially since it was contemplated that 90% of the loan would be guaranteed by the Federal Government.

■ Plaintiff has also failed to show that he sustained the alleged loss and damage as the proximate result of defendant's oral representations having been made. Even if GSC's loan application had been pending with Wells Fargo Bank on February 4, 1977, when the Stock Purchase Agreement was executed, there is no assurance that the loan would have been approved[5]. And even if the loan had been approved, the evidence does not establish with any degree of certainty that any particular portion of the loan would have been used to pay plaintiff. Although GSC agreed to pay $100,000 to plaintiff for the shares of Jason D. Groode Enterprises, the court is not prepared to find that the value of Jason D. Groode Enterprises was $100,000 at the closing of the Stock Purchase Agreement on February 4, 1977.[6]

### Written Representation

As previously indicated, paragraph 7.3 of the Stock Purchase Agreement states that "Gene Stewart and Gary Martin are the record and beneficial owners of all of the issued and outstanding shares of Buyer".

The evidence disclosed that as of February 4, 1977 GSC had not issued any shares of stock. The evidence also indicated that

---

3. When GSC defaulted on March 1, 1977 by failing to pay the installment of principal and interest due on that date, plaintiff chose not to exercise the rights reserved to him under the Stock Purchase Agreement, the Guarantee, the Stock Pledge Agreement, and the Security Agreement. Instead, plaintiff entered into a forbearance agreement with GSC, the defendant, and Gary A. Martin as indicated above.

4. Both plaintiff and one of his counsel testified that if defendant had not made the oral representations, plaintiff would not have entered into the Stock Purchase Agreement. However, the Stock Purchase Agreement and the other documents which were executed in its consummation contained detailed provisions designed to protect plaintiff, and nothing whatsoever was included about GSC's loan application.

5. GSC did apply to Wells Fargo Bank for a loan on April 11, 1977. This loan was never granted.

6. Several months after the closing of the Stock Purchase Agreement, plaintiff apparently concluded that the business which he had sold to GSC was worthless and chose not to enforce his security interest in that business. Although plaintiff contends that this depreciation in value was caused by the acts of the defendant, insufficient evidence was presented for the court to determine the value of Jason D. Groode Enterprises on February 4, 1977.

It also appears that plaintiff decided not to enforce its security interest in GSC and its subsidiaries, but determined to rely solely upon the Guarantee executed by defendant and Gary A. Martin.

during November 1976 one Helen S. Hadden loaned some money to GSC and was in some manner promised 34% of the shares of GSC; although documents relating to the transaction with Helen S. Hadden were not made a part of the record. On or about November 9, 1977 the initial shares of GSC were issued to the defendant and Gary A. Martin. On or about November 29, 1977 GSC made application to the Department of Corporations to issue 17 shares to Helen S. Hadden.

While the quoted statement from paragraph 7.3 of the Stock Purchase Agreement is inaccurate, the court is not persuaded that defendant knew that the statement was false or that defendant made the statement with the intention and purpose of deceiving plaintiff. The Stock Purchase Agreement is voluminous, containing 20 pages in its body and an additional 48 pages of exhibits. The Agreement was prepared primarily by plaintiff's counsel, although counsel for GSC also participated in the process. Moreover, as discussed above in connection with defendant's oral representations, the closing of the Stock Purchase Agreement gave GSC nothing that it could not be immediately deprived of on default, and substantially increased the individual liability of the defendant.

Nor is the court persuaded that plaintiff sustained the alleged loss and damage as a proximate result of the statement in paragraph 7.3 of the Stock Purchase Agreement having been made. It does not appear that the inaccuracy of the statement affected plaintiff's security in any way.

### CONCLUSION

This court concludes that judgment should be entered in favor of the defendant and against the plaintiff, denying the relief prayed for in plaintiff's complaint and determining that defendant's debt to plaintiff is dischargeable in bankruptcy. This Memorandum of Decision contains findings of fact and conclusions of law as required by Bankruptcy Rule 752(a).