MARY O. HOUCK ET AL. *v.* NICHOLAS DeBONIS ET AL.

[No. 257, September Term, 1977.]

*Decided November 15, 1977.*

The cause was argued before MOORE, LISS and WILNER, JJ.

*George W. White, Jr.,* with whom were *Samuel D. Hill, Donald G. Smith* and *White, Mindel, Clarke & Hill* on the brief, for appellants.

*William K. Connor,* with whom were *Connor & Carr* on the brief, for appellee Nicholas DeBonis. *Austin W. Brizendine, Jr.,* with whom were *Austin W. Brizendine* and *Brizendine & Brizendine* on the brief, for other appellees.

MOORE, J., delivered the opinion of the Court.

Appellant, Mary O. Houck, was the driver of a 1968 Ford station wagon and an attached 1970 trailer, both owned by her late husband, when she sustained serious personal injuries in a single-car accident on Interstate Route 81 near Harrisonburg, Virginia in 1972. She thereafter filed suit individually and as administratrix of her husband's estate [1] in the Circuit Court for Harford County against the dealer from whom her husband had purchased the trailer and two corporations responsible for its manufacture. Breach of warranty and negligence were alleged. Upon motion of the appellees, pursuant to Maryland Rule 501 (a), appellant's personal injury claim was separated for purposes of trial from her claim as administratrix for damages to her husband's property. At the close of a six-day trial, the court (Higinbothom, J.) granted the dealer's motion for a directed verdict, grounded upon a written disclaimer of warranty. In the case against the manufacturers, the jury thereafter returned a defendants' verdict.

On this appeal, two separate issues are presented. With respect to the manufacturers, it is argued that the court

---

1. The husband, Dwight Houck, died some nine months later of causes unrelated to the accident.

committed reversible error in admitting, as a declaration against interest, a statement made by the husband to the dealer within two weeks after the accident, which imputed negligence to appellant in her driving and towing. With respect to the dealer, appellant contends that the disclaimer of any warranty in the purchase agreement should have been held ineffective on the ground that it was not "conspicuous." [2] We find no error and affirm both judgments.

## I

In May 1971, Dwight Houck, appellant's deceased husband, purchased for $3,500 a travel trailer from appellee, Nicholas DeBonis, the proprietor of King of the Road Auto Sales in Havre de Grace, Maryland. The vehicle was a "used" 1970 model, manufactured by the appellee, Prowler Industries of Maryland, Inc., a wholly-owned subsidiary of Fleetwood Enterprises, Inc. It had been purchased new in late August 1970 by a retired Army Colonel. Mr. and Mrs. Houck took several motor trips with the trailer attached. They shared the driving on such occasions, and experienced no mechanical difficulties. Their adult children also made use of the vehicle and, similarly, did not encounter mechanical problems.

Appellant and her husband, in July 1972, took the trailer in tow on a visit to appellant's mother in western North Carolina, including excursions through the Smokey Mountains. News of an illness in the family caused the Houcks to curtail their vacation and proceed north. It was on their return trip, on July 26, 1972 near 4 P.M., that the accident giving rise to this litigation occurred.

Appellant testified that her husband was driving their station wagon, with the trailer attached, when they began their descent from Iron Mountain in Virginia. The road was steep and winding and, at the base of the mountain,

---

**2.** At the time appellant's husband executed the purchase agreement in May 1971, the disclaimer provisions contained in Md. Com. Law Code Ann. § 2-316 were applicable to consumer goods, including trailers. As pointed out *infra*, warranties on consumer goods can no longer be disclaimed.

appellant heard a "cracking noise," suggesting to her that "maybe one of the stabilizer bars had come loose." Mr. Houck stopped the car to investigate, but was unable to find anything wrong with the trailer.

The Houcks continued their trip on Interstate 81, a four-lane divided highway, and noticed soon thereafter that the trailer became extremely difficult to control when their speed exceeded forty miles per hour due to "swaying" or "fishtailing." Three mechanics, at different service stations along the road, examined the trailer in attempts to discover the cause of the problem; none found anything in need of repair, but the unsteadiness persisted. Appellant, at some point, relieved her husband of the driving, and drove approximately fourteen miles on Interstate 81 prior to the accident. While traveling in the "slow lane" of the road (then having a speed limit of 70) at a rate "somewhere between forty and thirty-five or forty, maybe even a little more than that," according to appellant's own testimony, a tractor-trailer passed her at a high rate of speed, causing her to fishtail, and resulting in appellant's losing control of her vehicle, which left the road, proceeded down an incline and came to rest against a pile of stones in an open field. Appellant sustained neck and other injuries; the trailer was severely damaged, its body and chassis having separated sometime during the accident. The station wagon was also damaged.

Appellant's theory of negligence — with respect to which substantial expert testimony was adduced by both sides — was that the manufacturer of the trailer did not properly install the mounting bolts which fasten the trailer body to the chassis.

## II

In the pretrial motion for separate trials of the appellant's personal injury claim and claim as administratrix, counsel for the appellees indicated an intent to present testimony that, about two weeks after the accident, Mr. Houck made a statement to the appellee DeBonis concerning appellant's

driving and rate of speed at the time of the accident. Such remark, they alleged, met the requirements for admissibility of hearsay testimony, as a declaration against interest, at least insofar as the personal injury action was concerned. As previously stated, the motion was granted.[3]

At the trial of Mrs. Houck's individual claim, appellees Fleetwood and Prowler called as a witness appellee Nicholas DeBonis, the trailer dealer. When asked whether he had had occasion to speak to Mr. Houck after the accident, DeBonis testified as follows:

> ". . . This was approximately within two weeks after the accident because the vehicles were still in Virginia at the time and Mr. Houck came into my place of business at that time and the question was, *did I have insurance on his trailer* and I asked him, for what reason, I said, Mr. Houck, this has been approximately fifteen months since I sold you the trailer. He says, well he had an accident and I asked him what occurred and he stated down in the State of Virginia in the vicinity of Harrisburg [sic], Virginia, on Interstate 81 that his wife wanted to drive and he let her drive and that *that was her first time towing a trailer* and he said that she was driving down Interstate 81 and a semi-tractor trailer passed her and I says, Mr. Houck, I know the rest of what happened, I can assume what happened and I says what speed was she going and *he said she was going approximately sixty-five miles an hour* and he said when the truck was passing her that the vehicle began to pull towards the left; that would be the trailer part would be pulling towards the left and the rear end of the car would be pulling to the left and that she swerved to the right, leaving the highway, going down through a ravine and through a fence." (Emphasis added.)

---

3. The court expressed its view that the dead man's statute, Md. Cts. & Jud. Proc. Code Ann. § 9-116 (1974) would preclude such testimony in the appellant's action as administratrix of her husband's estate.

Mrs. Houck presents the following question on this appeal, urging us to answer it in the affirmative:

"Was the testimony of the Appellee DeBonis concerning the alleged declaration of Mr. Houck against his interest improperly admitted and prejudicial to the Appellant's case?"

This issue causes us to reexamine the law of declarations against interest as exceptions to the hearsay rule, a subject about which little has been said in Maryland in recent years in civil cases. *Cf. Wilkins v. State*, 11 Md. App. 113, 273 A. 2d 236 (1971).

Before determining whether the requirements for the exception are met, we look to the nature of hearsay itself. *McCormick on Evidence* § 246 (2d ed. 1972) provides the following definition:

*"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."*

More simply stated, "[t]he rule against hearsay forbids the use of extra-judicial statements for the purpose of proving the truth of their content." Strahorn, *Extra-Legal Materials and the Law of Evidence*, 15 Md.L.Rev. 330, 340 (1955). Hearsay testimony is admissible in certain well-defined areas where circumstantial guarantees of trustworthiness are present. As stated by Professor Strahorn:

"[A]ll of the hearsay exceptions present type situations both possessing unusually favorable conditions for perception, recollection, and narration, the normal defects of which make the conditioning devices necessary, and, as well, involving the absence of motivation calculated to lead to falsehood." *Id.* at 343.

A hearsay exception for declarations against interest has traditionally been available.[4] The requirements have been variously enumerated, but generally include that the declarant be unavailable [5] at the time of trial, that the statement was made against his pecuniary or proprietary interests, that the declaration concerned a fact or event immediately cognizable by the declarant personally, and that no probable motive to falsify the facts existed when the statement was made. *See, e.g.,* Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 Harv.L.Rev. 1 (1944). Two types of declarations against pecuniary interest have been recognized — those stating a liability of the declarant to another and those defeating a claim which the declarant has against another. *Id.* at 29.

Wigmore does not isolate as a separate requirement the absence of motive to falsify the facts. In his view, the assertion of a fact which is directly contrary to one's interest is not likely to be the result of fabrication. 5 *Wigmore on Evidence* § 1457 (3d ed. 1940). Often, the learned Dean points out, it may not be immediately apparent that the declarant has uttered words adverse to his pecuniary affairs; the test for admissibility may still, however, be satisfied:

> "There are many facts which in their ultimate effect may be against proprietary or pecuniary interest, though in their immediate and narrow aspect there may be no such clear character. Those facts, however, may nevertheless be facts so decidedly against interest that no one would be inclined falsely to concede their existence. If so, on the general principle . . . they should therefore be

---

**4.** As McCormick emphasizes, *supra,* § 276, this exception is to be distinguished from the one for parties' admissions which "come in without satisfying any of the requirements for declarations against interest." *See infra,* n. 7.

**5.** The early English cases required that the declarant be deceased. Uniform Rule 63(10) has dispensed with the requirement of unavailability and, according to Professor McCormick, the only requirement in this country generally has been whether other grounds of unavailability will be accepted. "Any reason why the declarant cannot be brought in at the trial should suffice. . . ." *Id.* § 280; *see also* Fed. Rule 804(b)(3).

> admitted. No more precise test can well be formulated, except in the suggestion that the interest injured or the burden imposed by the fact stated should be one so palpable and positive that it would naturally have been present in the declarant's mind." *Id.* § 1461.

"Independent evidence," Wigmore further states, may be used to show that the matter stated was against the declarant's interest. *Id.* § 1468.

Maryland law accords recognition to declarations against interest as exceptions to the hearsay rule, and differs in no substantial respect from the general principles discussed above. The reported cases in Maryland, however, are few. The leading case is *Western Maryland Railroad Co. v. Manro,* 32 Md. 280 (1870), and the fact that it has not been cited in any subsequent decision is indicative of the infrequency with which this issue has arisen on appeal in Maryland. In *Manro,* an action was brought by a railroad company to recover on a subscription to its capital stock. The plaintiff sought to introduce, through a third party, the statement of a deceased company official that the defendant had paid him one dollar upon each share of stock at the time of his subscription. This evidence was essential to the plaintiff's cause of action under then-existing law. The court, quite understandably, rejected the statement as hearsay, finding no merit in the plaintiff's contention that it was made against the pecuniary interests of the official. Surprisingly, the only explication by a Maryland court of the requirements for admissibility of a declaration against interest is found in a case of such vintage:

> "The general rule in regard to the declarations of a person, since deceased, [6] . . . is this [:] to render them admissible against third persons, 'it must appear that the declarant is deceased; that he possessed competent knowledge of the facts, or that

---

6. *See* n. 5, *supra.*

it was his duty to know them; and that the declarations were at variance with his interest.' " 32 Md. at 282-283 [quoting 1 Greenl. Ev. sec. 147].

Later cases, although seemingly applying the same rule as to declarations against interest, award only perfunctory analysis to the issue. *See Buck v. Brady,* 110 Md. 568, 73 A. 277 (1909); *Rosenstock v. Rosenstock,* 151 Md. 253, 134 A. 143 (1926).[7] *See also Rosman v. Travelers' Insurance Co.,* 127 Md. 689, 96 A. 875 (1916) and *Stiegler v. Eureka Life Insurance Co.,* 146 Md. 629, 127 A. 397 (1925), involving suits by beneficiaries to recover the proceeds under life insurance policies wherein false statements made by the insured were held admissible against the beneficiaries.

The clearest example of a declaration against interest is a statement by the declarant that he is indebted to another, and, according to McCormick, the hearsay exception appears to have evolved from this type of case. *McCormick on Evidence, supra,* § 277. The application of the rule has, however, been significantly broadened:

"[T]he American cases have properly extended the field of declarations against interest to include acknowledgement of facts which would give rise to a liability for unliquidated damages for tort or seemingly for breach of contract. *A corresponding extension to embrace statements of facts which would constitute a defense to a claim for damages which the declarant would otherwise have, has been recognized in this country." Id.* (Emphasis added.) [8]

---

7. These decisions speak, almost interchangeably, of declarations against interest and admissions by party-opponent. The latter hearsay exception applies where the declarant is a party, carries no requirement of unavailability, and need not be known to be against interest at the time it is made. *See McCormick on Evidence* § 262 (2d. ed. 1972). *See also* Miles v. State ex rel. Wistling, 174 Md. 292, 198 A. 724 (1938) and Smith v. Branscome, 251 Md. 582, 248 A. 2d 455 (1968).

8. McCormick cites the following cases, *inter alia,* in support of this proposition: Walker v. Brantner, 52 P. 80 (Kan. 1898); Jewell v. El Paso Electric Co., 47 S.W.2d 328 (Tex. Civ. App. 1932); Kwiatkowski v. John Lowry, Inc., 11 N.E.2d 563 (N.Y. 1937); Home Insurance Co. v. Allied Telephone Co., 442 S.W.2d 211 (Ark. 1969).

In applying the law to the specific facts of this case, we note preliminarily that the evidence at trial was conflicting as to the speed at which Mrs. Houck was traveling when the accident occurred, leaving that question a matter for determination by the jury. Appellant herself testified, as previously noted, that she believed her speed to be between 35 and 40 miles per hour, but that she may have exceeded 40. A Virginia state trooper who investigated the accident, called by appellant, testified that Mrs. Houck told him she "was going about fifty or fifty-five" before swerving from the road. Either or both of the above may have led the jury to draw a reasonable inference that appellant was exceeding a safe speed for the trailer, especially in view of her prior testimony that she and her husband were aware that something was wrong and that the vehicle became difficult to control at a speed above 40 miles per hour.

We now consider whether the additional evidence concerning appellant's driving, in the form of the statement made by her husband to Mr. DeBonis, was a declaration against interest, admissible against appellant. No doubt exists that the statement was hearsay, offered to prove the truth of the matter asserted, *i.e.*, that Mrs. Houck was traveling at a speed of 65 miles per hour, made a turning movement to the right and lost control. In determining whether sufficient "circumstantial guarantees of trustworthiness" were present for hearsay to be admitted, we look again to the lone Maryland decision, *Western Maryland Railroad Co. v. Manro, supra*, setting forth the requirements for declarations against interest.

First, it must appear that the declarant was deceased [9] at the time of trial. Mr. Houck's death was acknowledged in this regard. Second, the declarant must have had competent knowledge of the facts, or a duty to know them. Mr. Houck was a passenger in the vehicle driven by his wife; his firsthand knowledge was surely competent. Third, the declaration must have been at variance with the interests of

---

**9.** We are confident that the Court of Appeals would no longer limit the scope of the exception to decedent's declarations but would extend it, at least, to the declarant's unavailability.

the declarant. This is a critical element of the hearsay exception and in this case gives some pause; but we are satisfied that Judge Higinbothom correctly ruled that Mr. Houck's statements to Mr. DeBonis were contrary to his own interests. We observe that he made a ruling in chambers after stating on the record that he had researched the question and after hearing argument of counsel. In making an oral disposition of appellant's objection, the court first quoted the general rule as stated in *Western Maryland Railroad Co. v. Manro, supra,* and then adverted to *McCormick on Evidence, supra,* § 277, stating:

> "Now, *McCormick on Evidence* . . . states that 'statements of facts which would constitute a defense to a claim for damages which declarant would otherwise have, has been recognized in this country as declaration against interest'. And what we have here is, if the statement was made to Mr. DeBonis by Mr. Houck, we have Mr. Houck who is now deceased who certainly had knowledge of the facts because he was there in the vehicle who is making a statement which would constitute a defense to a claim which he might [otherwise] have [had]. . . ."

The factual context in which the statement was made supports the court's ruling. Mr. Houck was plainly aware, as the record in this case discloses, of facts which would suggest the possible presence of a defect in the trailer. It is undisputed that his purpose in visiting DeBonis was to ascertain whether there was any insurance coverage through which he might obtain compensation for his property damage. At that time he was obviously conscious of his own loss and of his wife's personal injuries. The recitation by him of the facts relating to his wife's driving was then made in the face of knowledge that a nonculpable source of recovery, *i.e.,* insurance, was unavailable but with knowledge also of a possible defect in the trailer which would afford a basis for recovery — both on his part and that of his wife — from a culpable source. His statements to

DeBonis clearly imputed contributory negligence to his wife and were therefore against his pecuniary or proprietary interests. As the lower court held on the authority of McCormick, *supra,* he made a statement which would constitute a defense to a claim which he might have. Such a declaration is admissible whenever relevant, no matter what the relationship is between the declarant and the party against whom the statements are offered. *Id.* § 277. *See also Filesi v. United States,* 352 F. 2d 339, 343 (4th Cir. 1965).

Accordingly, we find no error in the trial court's ruling.

## III

It remains for us to consider appellant's second claim concerning the trial court's granting of a directed verdict in favor of the appellee DeBonis on the basis of his disclaimer of all warranties in the contract of sale for the used trailer.

The contract, dated "5/10/71," was on a printed form, headed "King of the Road Trailer Sales," and entitled, "Purchase Agreement." Two separate statements on the face of the contract referred the purchaser to provisions on its reverse side. One such statement is in small, boldface type, beneath the name and address of the purchaser, at the top of the form. The other is contained in a paragraph found above the signature line in the lower right corner of the form. Mr. Houck's signature appears in the designated place.

The reverse side of the form is entitled "ADDITIONAL TERMS AND CONDITIONS," and contains twelve enumerated series of paragraphs in small, boldface type. Item No. 7 is entitled "DISCLAIMER OF IMPLIED WARRANTY," the heading appearing in capital letters. Four separate paragraphs are included in this section, and all are fully underscored. The Disclaimer section is the only portion of the reverse side of the form which is underscored. The fourth paragraph of Item No. 7 states as follows:

> "A used unit is sold 'as is' without guaranty or warranty, either expressed or implied, as to its condition, or the condition of any part thereof, including its quality, suitability for purpose, the

year of manufacture, its size or the particular model it may be, unless such exceptions are specifically mentioned, in writing, on the face of the order, or in a separate instrument, furnished to the buyer by the seller at the date of purchase."

Appellant sought recovery against appellee DeBonis on a theory of breach of warranties under the Maryland Uniform Commercial Code, presumably under Md. Com. Law Code Ann. §§ 2-314, 2-315 (1975), relating to implied warranties of merchantability and fitness for particular use. At the time appellant's husband entered into the purchase agreement in May 1971, the disclaimer provisions of § 2-316 were fully applicable to consumer goods, including trailers.[10] Section 2-316 provides, in pertinent part:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof'.

"(3) Notwithstanding subsection (2)
(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; . . . ."

---

**10.** Under the present law, warranties on consumer goods cannot be disclaimed. *See* Md. Com. Law Code Ann. § 2-316.1 (1975). This provision was added to the Code by Laws of Md., ch. 505 (1971) as § 2-316A of art. 95B (1957, 1964 Repl. Vol.), effective July 1, 1971.

The issue for our review is whether the disclaimer of warranties by the appellee DeBonis was sufficiently "conspicuous" to be effective. It has previously been recognized by the Court of Appeals that "as is" disclaimers under § 2-316 (3), *supra,* must meet the same "conspicuousness" requirement of § 2-316 (2), applicable to warranties which mention "merchantability." *Fairchild Industries v. Maritime Air Service, Ltd.,* 274 Md. 181, 333 A. 2d 313 (1975). A definition of "conspicuous" is provided in § 1-201 (10) of the Commercial Code. It states as follows:

> "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. *Whether a term or clause is 'conspicuous' or not is for decision by the court."* (Emphasis added.)

In granting a directed verdict for DeBonis, the trial court, at least impliedly, made a determination that the disclaimer on the reverse side of the contract of sale was "conspicuous." We agree with this conclusion.

We are concerned here with a "reverse-side" disclaimer. The following statement from 1 Anderson, *Uniform Commercial Code* § 1-201:30 (2d ed. 1970) is relevant:

> "A provision on the reverse side of a document may or may not be conspicuous under the circumstances of the case.
>
> "*Where there is nothing on the face of the writing to call attention to the provisions on the back of the instrument,* it is likely that the provisions on the back will not be deemed 'conspicuous', regardless of whether they would be 'conspicuous' if on the face of the instrument." [*citing Hunt v. Perkins Machinery Co.,* 226 N.E.2d 228 (Mass. 1967);

emphasis added]. *See also* White and Summers, *Handbook of the Law Under the Uniform Commercial Code* § 12-5 (1972).

A leading case on reverse-side disclaimers is *Childers & Venters, Inc. v. Sowards,* 460 S.W.2d 343 (Ky. 1970). The court there upheld such a disclaimer, because it was printed in larger and heavier type than the rest of the form. No intent was found on the part of the Code's drafters to invalidate *per se* reverse-side disclaimers:

> "In their process of arriving at an appropriate definition of the word 'conspicuous' we feel sure that the drafters of the Uniform Commercial Code were not unmindful that commercial institutions customarily use both sides of the paper in printing form contracts that cannot be conveniently compressed into one page. It would have been easy to say, if they had so intended, that in order for language in a contract to be 'conspicuous' it must appear on the front sheet or on the same sheet as the signatures. In the absence of such a provision we cannot reasonably construe it so." 460 S.W.2d at 344-345.

Other courts have held that more than a "slight contrast" must exist between the disclaimer and the remainder of the contract for the disclaimer to be operative. *Dorman v. International Harvester Co.,* 120 Cal. Rptr. 516, 522 (Cal. App. 1975); *Woodruff v. Clark County Cooperative Assn.,* 286 N.E.2d 188, 198 (Ind. App. 1972); *Greenspun v. American Adhesives, Inc.,* 320 F. Supp. 442, 444 (E.D. Pa. 1970). As stated in Official Comment 10 to § 1-201 (10) of the Commercial Code, "the test [of a disclaimer's effectiveness] is whether attention can reasonably be expected to be called to it."

We do not believe there is a shred of doubt that the trial court properly found the disclaimer here to be "conspicuous." The face of the contract mentions in two separate places that additional terms and conditions are

100

contained on its reverse side. Furthermore, the disclaimer language is separately underscored in Item No. 7, and a heading in capital letters demarcates the section. Appellant has alleged no other reason why the disclaimer should not be given effect.

*Judgments affirmed; appellants to pay the costs.*