**BRUFFEY CONTRACTING CO., INC., Plaintiff,**

v.

**BURROUGHS CORPORATION, Defendant.**

**Civ. A. No. J–79–58.**

United States District Court, D. Maryland.

Sept. 28, 1981.

Murray L. Deutchman, Rockville, Md., for plaintiff.

Ralph N. Albright, Jr., Avis E. Black, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

The subject of this suit is a B80 office computer, purchased by Bruffey Contracting Co., Inc. (Bruffey) from Burroughs Corporation (Burroughs) in May 1977. Bruffey was never satisfied with the performance of the computer, and finally announced its desire to repudiate the contract of sale in September 1978. The question is whether, based on the facts presented at trial and under the legal doctrines applicable, it will be permitted to do so or, alternatively, to recover damages. For reasons set forth in this opinion, this Court concludes that it may not.

Bruffey brought suit against Burroughs in December 1978 for breach of contract, seeking rescission and damages, in the Circuit Court of Howard County, Maryland. The action was removed from state court at the request of Burroughs, discovery was had, and an amended complaint and answer to it were filed in April and May 1980. Trial to this Court was held on October 27, 28, 30 and 31, 1980. The opinion constitutes this Court's findings of fact and conclusions of law.

This Court has jurisdiction over this action under 28 U.S.C. § 1441. The citizenship of Bruffey and Burroughs is diverse: Bruffey is a Maryland corporation with its principal place of business in Maryland, and Burroughs is a Michigan corporation with its principal place of business in that state. An amount greater than $10,000 is in controversy.

Ralph Bruffey, president of Bruffey, testified at trial that he became interested in obtaining an office computer to handle office billing and accounting work in early 1977. He had telephone and personal conversations with Edwin C. Van Allen, then Burroughs' zone sales manager, and with Christopher Barnes, then a Burroughs salesman. Bruffey explained his needs and, according to his testimony and that of Van Allen and Barnes, his desire to arrange through Burroughs for a complete package, including computer programs (software) as well as equipment (hardware). Burroughs did not then have application programs [1] for

---

1. An application program is one that directs the computer to perform specific functions the customer needs, for example, a payroll program. It is distinguished from an operation program, called "firmware," which controls the computer equipment in conjunction with in-

use on the B80 computer, a relatively new model.[2]

On April 13, 1977 a contract was executed between Bruffey and Burroughs for a B80–50 system, consisting of several items of equipment and certain support software and services (P. Ex. 2, 5). On the same date, Bruffey contracted with AMRICO Business Services (AMRICO) for the provision of six computer programs to be used on the Burroughs equipment (P. Ex. 1). AMRICO was operated by David Briggs, a friend of one of the Burroughs salesmen, and Van Allen referred Bruffey to them in order to secure the sale of the equipment to Bruffey.[3] A contract of May 11, 1977 (P. Ex. 3) replaced the original one; its only difference from the first was that a greater memory capacity was provided. A separate contract of May 11, 1977 provided an additional minidisk cabinet and disk controller (P. Ex. 4). The main computer was delivered to Bruffey on June 30, 1977 and installed July 6, 1977. The additional minidisk cabinet and controller were delivered on September 7, 1977 and installed on September 10, 1977. Bruffey paid in full for the equipment and support services, paying the net balance of $22,198.40 on the main package on July 11, 1977 and the sum of $5,873.00 for the extra minidisk equipment on October 6, 1977.

Problems with the computer system developed, particularly beginning in February 1978, when the programs had been substantially completed and the system was operating fully, and continuing through March 1978. A meeting with Burroughs personnel was held on April 1, 1978 (P. Ex. 13) to try to resolve the problems. Possibly as a result of that meeting, but in any event around the same time, some disputed service charges were cancelled by Burroughs, and Bruffey signed a service contract for maintenance and repairs for the equipment

(P. Ex. 10). The contract was signed on April 3, 1978, and payment was made by Bruffey. Bruffey was unsatisfied with the continued performance of the computer. On September 28, 1978, a letter of his attorney announced Bruffey's rescission of the agreement with Burroughs (P. Ex. 7). The computer has remained, unused, in Bruffey's office.

■ The result reached here depends in large part on this Court's interpretation of the contract between the parties. It contains a provision that Michigan law governs the agreement. In a diversity case this Court looks to the choice of law rules of the forum to determine what law is to be applied, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Maryland courts will honor contractual choice of law provisions. *E. g., Kronovet v. Lipchin*, 288 Md. 30, 415 A.2d 1096 (1980). The law applied to the contract is Michigan law.

■ This Court ruled at trial on October 31, 1980 that the limitations of warranties and remedies contained in the contract (P. Ex. 3, Terms and Conditions, ¶ 4), are not unconscionable under Michigan law. No other rulings concerning the interpretation and effect of the contract have been made. The factual and legal questions concerning the alleged defects in the computer must be placed in the context of the contractual warranties Burroughs is alleged to have breached.

The May 11, 1977 contract contains a warranty of title and a warranty that "for a period of one year from shipment, the equipment shall be free from defects in material and workmanship under normal use and service." (P. Ex. 3, Terms and Conditions ¶ 4). The making of warranties is restricted to the contract, as follows:

---

structions of application programs. Firmware was provided by Burroughs as part of the package sold Bruffey.

**2.** There was a conflict in testimony as to whether Burroughs had standard programs, such as payroll programs, for use on the B80 at

this time. If it did, they were not available at the local office.

**3.** Exactly what Van Allen's relationship with AMRICO was at first and later is not clear. It is discussed in more detail later in this opinion.

No representation or other affirmation of fact, including but not limited to statements regarding capacity, suitability for use, or performance of the equipment, shall be or be deemed to be a warranty or representation by Burroughs for any purpose, nor give rise to any liability or obligation of Burroughs whatsoever.

There follows in larger, boldface type a disclaimer of warranties:

Except as specifically provided in this agreement, there are no other warranties express or implied including but not limited to any implied warranties of merchantability or fitness for a particular purpose.

The remedy for breach of warranty is limited to correction of defects:

Customer's sole and exclusive remedy in the event of defect is expressly limited to the correction of the defect by adjustment, repair or replacement at Burroughs election and sole expense, except that there shall be no obligation to replace or repair items which by their nature are expendable.

Another contractual provision excludes liability for consequential damages. (P. Ex. 3, Terms and Conditions ¶ 8).

Ralph Bruffey testified at trial that he was aware of the limitation of warranties and remedies in the contract when he signed it. He had had the advice of an attorney when the original contract, identical in its warranty and remedy clauses, was signed. Although his testimony might otherwise establish an express warranty that the computer system was suitable for his needs, *cf. Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 370–71 (E.D.Mich.1977) (statements in catalog construed with a "defects in material and workmanship" warranty clause), the contract specifically provides that no affirmations or other statements of fact, including ones as to suitability, are to be considered warranties. Although recent Michigan cases seem to have construed warranty and remedy limitations in a way favoring the buyer, *Bosway Tube & Steel Corp. v. McKay Machine Co.*, 65 Mich.App. 426, 237

N.W.2d 488 (1975); *National Cash Register Co. v. Adell Indus., Inc.*, 57 Mich.App. 413, 225 N.W.2d 785 (1973); none of the cases cited has had this specific provision, and Michigan courts have relied on general principles under the Uniform Commercial Code.

Implied warranties of merchantability or fitness for a particular purpose are excluded in a provision of the Bruffey contract. The exclusion complies with the U.C.C. provisions for exclusion of implied warranties, Mich.Comp.Laws Ann. 440.2316; it is set out in a separate paragraph, in all capital letters and boldface type, and specifically mentions "merchantability." As previously noted, this Court has held that the contractual provisions are not unconscionable.

The contractual provisions effectively limit Burroughs' warranty to a one-year warranty against defects in material and workmanship of the equipment. This warranty is not necessarily self-defining. In *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364 (E.D.Mich. 1977), the district court found that an express warranty had been made in a catalog. It construed that warranty with a warranty limited to defects in material and workmanship, stating that their combined effect was that "the sales material and technical specifications on the order established the standard of the product's performance when free of defects in material and workmanship." *Id.* at 371. Thus, the express representations were not inoperative. In this case, the contractual provision stating that no affirmations or statements of fact are to be warranties precludes an attempt similarly to read the warranty limitation with other statements made to Bruffey. The reasonable reading of the warranty is that only what are termed manufacturing defects in the products liability field are included, that is, defects in the parts themselves and the way they are put together.

Reading the warranty and remedy paragraphs of the contract as a whole, the warranty is further limited to defects in nonexpendable parts. The warranty paragraph contains no such limitation. The remedy clause limits the customer to adjustment,

repair and replacement "in the event of defect," but further provides that there shall be no obligation to repair or replace expendable items. It would be incongruous, in light of the other paragraphs, to read this contract as a commitment to undertake more for easily replaced, expendable items than for others.

A problem may lie in the definition of an expendable part, and plaintiff suggests that Burroughs has an overbroad definition of "expendable." An item that gets used in the course of operation, such as a printer ribbon, provokes no controversy. Burroughs also defines as expendable printed circuit boards, which contain chips and connectors. The circuits are so tiny that they cannot be repaired, although chips can be replaced. Burroughs limits itself to repair and replacement but excepts from that remedy the items most likely to be replaced. Subject to Code provisions on unconscionability and a general standard of commercial reasonableness, it may do this. The contractual limitations of warranty and remedy were not unconscionable. Standard contracts of some manufacturers of similar computer systems also contain similar warranty and remedy limitations clauses (Joint Ex. 1B, ¶ 44). The miniaturized electronic components of circuit boards may fail for any number of reasons, and the parts are so tiny it is virtually impossible to determine the cause of failure. It is commercially reasonable for Burroughs to allocate the risk of loss from undetermined causes to the buyer of the equipment.

The extremely limited nature of the contractual warranty given by Burroughs is important, for it is against this warranty that plaintiff's claim of breach must be measured. Extensive testimony at trial was presented concerning the number of service calls made on Bruffey's computer. Once the Bruffey computer programs were substantially completed around the beginning of 1978, service calls were made, with increasing frequency in February, March and April 1978. The calls noted in the field engineering report book (P. Ex. 6) for this period occurred on February 6, 8, 14, 15, 22, and 27; March 3, 9, 21, 22, 23 and 24; and April 5, 6, 7, 14, 8 and 27, 1978. Many resulted in the making of minor adjustments and replacement of printed circuit boards.

Problems continued, occurring with less frequency in May and June, then resuming in August and September 1978. Service calls were made on May 19 and 31, June 1 and 2, August 11, 14, 15, 16, 21 and 22 and September 6, 19, and 21, 1978. Ralph Bruffey and Deborah Field, his operator during most of this period, testified that there were also times when the service calls were made but not recorded.

Burroughs contends that plaintiff failed to show that the problems were caused by defects in material or workmanship of nonexpendable parts. It notes that in some instances reseating or replacement of the printed circuit boards cured the problem, that plaintiff's expert could not state the cause of the problems, and that vibration, power surges, and excessive heat could have caused the computer to malfunction on different occasions. Bruffey need not identify with precision the cause of the computer's malfunctions; it is sufficient that it has shown a breach of warranty. *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 373–74 (E.D.Mich.1977). In this instance, however, the warranty is very limited. Thus, while plaintiff need not necessarily identify the precise technical cause of the malfunctions, it must show that the cause was defects in equipment and workmanship.

Bruffey's problems fall into two main categories, printer jams, or freezes, and printer initializing, that is, going back to the starting point of a run after some of it had been completed. The jamming occurred, within the warranty period, at least on March 3, 21–24, April 5–7, and June 1–2, 1978. The initializing occurred on February 27, March 3 and 9, April 14 and May 19. Other problems developed on occasion but did not recur. An inference can be drawn from the recurrence of the printer problems, even after expendable parts were replaced and adjustments made, that they

were caused by defects in the equipment itself. Plaintiff's expert, Robert C. Bugash, testified that in his opinion the problems resulted from an intermittent malfunction in the equipment, although he could not say just what malfunction.

The inference that can be drawn from recurrence of the problems and plaintiff's expert's testimony are sufficient to meet plaintiff's initial burden of going forward and to overcome a motion to dismiss at the close of plaintiff's case. Defendant's evidence was sufficient, however, to rebut plaintiff's evidence on the cause of the malfunctions. Viewing the evidence as a whole, plaintiff failed to establish that the malfunctions were caused by defects in the material and workmanship of the equipment.

Although defendant's witnesses admitted that in some instances the cause of the problem could not be identified and that a defect in equipment causing an intermittent failure would not necessarily be detected, this Court finds credible their testimony that the failures were not due to defects in nonexpendable parts of the computer. The nature of the system is that no one could say with certainty in every case exactly what caused a malfunction. The fact that the field engineers who testified for the defendant work for Burroughs has been taken into account; however, of greater importance is the fact that they actually observed the machine at the time of, or shortly after, the various problems occurred. Thus, I give their testimony greater weight than that of plaintiff's expert, who examined the machine much later.

Plaintiff's expert testified that the design of the computer was defective in at least two respects. He believed that a computer designed for general office use should have been capable of operating in a normal environment. Defendant had contended that one cause of some malfunctions was excessive heat in Bruffey's office. Plaintiff's expert also stated his opinion that the seating, or restraining, devices for printed circuit boards were inadequate; this was in response to testimony that the boards may

have worked loose through vibration of the machine. If implied warranties of merchantability and fitness for a particular purpose or other kinds of express warranties, were involved in this case, the testimony would be quite pertinent. Under the contractual provisions involved here, however, such warranties were excluded.

Some of the malfunctions of the computer were traced to programming error, and defendant suggested that others may have been caused by program errors. Burroughs was not a party to the software contract; it was between Bruffey and AMRICO. The programming was actually done by Edwin Van Allen, then the Burroughs zone sales manager. Van Allen concealed the fact that he was preparing Bruffey's programs from Burroughs, with Bruffey's complicity, but his involvement was revealed at the April 1, 1978 meeting. Van Allen was told to finish up as soon as he could. Plaintiff contends that this direction constituted a ratification and that Burroughs is barred from asserting defective programs as a defense.

Bruffey paid AMRICO $2,000 as a deposit for programming services on April 13, 1977. He knew that AMRICO was not affiliated with Burroughs and that Burroughs did not have and was not going to prepare his programs. (Joint Ex. 1A, Stipulations ¶¶ 5–9). Burroughs received no money from AMRICO (Joint Ex. 1A ¶ 13). Van Allen testified that he received no payment from AMRICO for doing the programming, although he let Bruffey believe that he was being paid. He conceded that he profited from doing the programming because he would not have made the sale without it. Burroughs, of course, profited in this sense also.

The doctrine of ratification provides that a contract made by an agent without authority may, by words, conduct or silence, subsequently be approved by the principal, retroactively conferring authority on the agent. *E. g.*, 2 *Williston on Contracts* § 278 (1959 & 1981 Supp.). The doctrine only applies if the transaction is originally entered into on behalf of a princi-

pal, who subsequently ratifies it, and the person making it represents himself as the principal's agent. *Id.* In this case there was never any contract between Bruffey and Van Allen, supposedly on behalf of Burroughs, in which Van Allen represented himself to be acting for Burroughs. The original contract with AMRICO does not fall into that category. If plaintiff bases his ratification theory on some later oral agreement with Van Allen, the undisputed facts are that Van Allen never purported to act, and Bruffey never believed he was acting, on behalf of Burroughs. Bruffey knew what Van Allen was doing was not authorized by Burroughs; indeed, he helped Van Allen conceal it from Burroughs for a time. Bruffey apparently believed Van Allen was doing the programming for his own benefit. The ratification doctrine, as well as similar theories of apparent agency or agency by estoppel, are not applicable.

Even if they were, Burroughs' action of telling Van Allen to finish up cannot be interpreted as a subsequent approval of Van Allen's actions, so as to make Burroughs liable for programming. The testimony and exhibits establish that by April 1, 1978 Burroughs' concern was that, whatever the cause, Bruffey was having problems and was complaining about them. Burroughs wanted to help get those problems straightened out. It had a policy against its personnel doing programming as Van Allen had been. By the end of March, however, Van Allen had nearly completed his job. In light of the problems Bruffey was having, having Van Allen go ahead and finish up was simply the fastest way to get one of Bruffey's problems straightened out.

Plaintiff has failed to demonstrate a breach of the limited warranty given by Burroughs and thus cannot revoke acceptance of the sales contract or recover damages. A separate judgment order will be filed, entering judgment in this case in favor of the defendant.