JASKEY FINANCE AND LEASING
and Samrus Corp.

v.

DISPLAY DATA CORP.

Civ. A. No. 82–3963.

United States District Court,
E.D. Pennsylvania.

April 27, 1983.

---

**3.** It is not without significance that Otsuka sought a downward, but unspecified revision or adjustment of the $250,000 figure after he realized that the Kisco process could not be used, but at a time he was not aware that Verson's October 27, 1980 proposed contract had been rejected. Holden refused to lower the figure, not realizing that by having submitted a counter proposed agreement, the legal effect was to prevent a binding contract from coming into existence.

Ronald J. Klimas, Eckell, Sparks, Auerbach & Monte, Media, Pa., for plaintiffs.

Henry L. Shrager, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this diversity action, defendant, Display Data Corporation ("Display Data"), a Maryland corporation with its principal place of business in Maryland, moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the claims of plaintiffs, Jaskey Finance and Leasing ("Jaskey") and Samrus Corporation ("Samrus"), both Pennsylvania corporations with their principal places of business in

162

Pennsylvania, for breach of express warranties, warranties of fitness and for negligent design of a computer system. For the reasons set forth in this memorandum, the Court will grant the defendant's motion to dismiss the express warranty claims, the implied warranty of fitness claims, and the negligent design claim.

The subject of this suit is a 32K computer purchased by Jaskey and Samrus from Display Data in October, 1977. The parties entered into two contracts, one for the sale of the equipment, programming and installation services and another for maintenance of the computer system. Plaintiffs, who were dissatisfied with the operation of the computer, sued alleging that the computer and its component parts failed to operate properly, resulting in damages and the further economic loss of obtaining alternate computer time. In their lawsuit, plaintiffs allege that defendant's conduct amounted to a breach of contract, a breach of express warranties, a breach of implied warranties, misrepresentation and negligence.

■■■ Two contracts are concerned: (a) an Equipment, Programming and Installation Services Contract, and (b) a Maintenance Contract. Each of these contracts is comprised of a single sheet of paper printed on both sides. The front side of the contracts contains blank spaces on which the name of the parties, the quantity, model number and the price of the goods were filled in. The bottom of the front side of the contracts states in bold type "Terms and Conditions on Reverse Side Are Part of This Contract." Immediately under this phrase the signatures of the parties appear. The reverse side of the Equipment, Programming and Installation Services Contract is titled "Terms and Conditions" and contains six separately numbered and titled paragraphs. Two of the paragraphs are relevant to the present case. The first is paragraph 5 which is titled "Warranties" and within it is the following warranty and disclaimer:

(a) Seller warrants that it will provide maintenance service for Purchaser according to the terms and conditions of the separate maintenance contract executed by and between the parties.

(b) For a period of one (1) year after the program is delivered, Seller will make every reasonable effort to remedy or correct any errors in the program which are brought to the attention of the Seller.

(c) EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OR REVERSE SIDE HEREOF.

(d) IN NO EVENT SHALL SELLER BE LIABLE TO PURCHASER FOR LOSS OF PROFITS OR OTHER ECONOMIC LOSS, INCLUDING SPECIAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES ARISING OUT OF ANY CLAIMED BREACH BY SELLER OF ITS OBLIGATIONS THEREUNDER.

The other relevant provision in the Equipment, Programming and Installation Services Contract is under paragraph 6 which is entitled "Miscellaneous" and reads "This contract contains the entire agreement between the parties, and shall be binding upon both parties and their respective heirs, successors and/or assigns." The Maintenance Contract in paragraph 7 contains a similar disclaimer clause which reads "EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WHICH EXTEND BEYOND THE DESCRIPTION CONTAINED HEREIN." The contracts between the parties contain provisions that Maryland law governs the agreement. Since this is a diversity case, the Court must look to the choice of law rules of Pennsylvania, the forum, to decide what law is to be applied. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania courts honor contractual choice of law provisions where, as here, the parties have sufficient contacts with the chosen state. 13 Pa.C.S.A. § 1105(1). *See Aluminum Co. of America v. Essex Group, Inc.*, 499 F.Supp. 53, 59 (W.D.Pa.1980).

■ In evaluating the defendant's motion to dismiss, the Court must construe the allegations in the complaint, along with the attached contracts, in the light most favorable to the plaintiffs. *See Rogin v. Bensalem Tp.,* 616 F.2d 680, 695 (3rd Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Motions to dismiss are only granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Nonetheless, the claim may be resolved in a motion to dismiss, if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court. *See Haskins v. Point Towing Co.,* 421 F.2d 532, 536 (3d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970); *Royal Business Machines, Inc., v. Copi-Quik, Inc.,* No. 81–4679, slip op. 4 (E.D.Pa. January 17, 1983).

■ As to the plaintiff's express warranty claim, it is clear that the words employed in the disclaimer clause in the Equipment Contract, along with the integration clause, are sufficient to preclude express warranties. Plaintiff alleges that Display Data expressly warranted that the computer and programs which it was selling and leasing constituted a "turnkey" system that required plaintiff to perform only routine maintenance; was a system which was particularly suitable for use by an automobile dealership; was a system which was adaptable to businesses other than automobile dealerships and was a system in which all errors and malfunctions would be eliminated within a specified time period thereby resulting in an error-free system. The written contractual agreements described previously do not contain any of these alleged express warranties. The Equipment Contract warrants that the seller will provide maintenance service for the purchaser subject to the terms in the Maintenance Contract and that for a period of one year after the program is delivered, seller will make every reasonable effort to correct any

errors in the program. These are the only express warranties that are created by the contracts. Moreover, the contracts expressly exclude any other express warranties. Paragraph 5(c) of the Equipment Contract reads "EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OR THE REVERSE SIDE HEREOF." Paragraph 7 of the Maintenance Contract contains almost identical language. Although the parties have not brought to the Court's attention any Maryland cases which are dispositive of the express warranty issue, Maryland has adopted the Uniform Commercial Code and cases in other states applying the Uniform Commercial Code are almost unanimous in holding that provisions disclaiming express warranties by the use of language similar to that in this case are effective disclaimers of express warranties. *See S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1371 (9th Cir.1978) (applying California law); *Bruffey Contracting Co. v. Burroughs Corp.,* 522 F.Supp. 769, 772 (D.Md. 1981) (applying Michigan law), *aff'd* 681 F.2d 812 (4th Cir.1982); *Aplications, Inc. v. Hewlett Packard Co.,* 501 F.Supp. 129, 132 (S.D.N.Y.1980) (applying California law), *aff'd* 672 F.2d 1076 (2d Cir.1982) (per curiam); *Investors Premium Corp. v. Burroughs Corp.,* 389 F.Supp. 39, 44–45 (D.S.C. 1974) (applying South Carolina law); *Rudy's Glass Construction Co. v. E.F. Johnson Co.,* 404 So.2d 1087, 1089 (Fla.App. 1981); *Zugarek v. Walck,* 54 A.D.2d 1074, 1075, 388 N.Y.S.2d 756, 757, 757–58 (App. Div.1976); *Bakal v. Burroughs Corp.,* 74 Misc.2d 202, 204–05, 343 N.Y.S.2d 541, 543–44 (Sup.Ct.1972).

It is true, as plaintiff contends, that Maryland's Commercial Code does not require that express warranties be made part of the written agreement but rather provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform

to the affirmation of promise." Md. [Com. Law] Code Ann. § 2–313(1)(a). Plaintiff in its brief states that the express warranties alleged were contained in advertising or promotional material that was received by the plaintiff. However, the plaintiff ignores the effect of the parol evidence rule on this transaction. Under Maryland's Commercial Code if the parties intended the written contract to be a "final" expression of their agreement, then it may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement, and if the parties intended the contract to be the "complete and exclusive" statement of their agreement, it may not be supplemented even by non-contradictory terms. Md. [Com.Law] Code Ann. § 2–316(1), 2–202.

The Equipment Contract contains an integration provision which reads in relevant part, "[t]his contract contains the entire agreement between the parties." Thus, the contract plainly states that it constitutes the entire understanding between the parties. Courts applying the Uniform Commercial Code's provisions to similar integration provisions have found that such language is sufficient to render the contract the final and exclusive agreement of the parties, thereby preventing the introduction of parol evidence to vary the contract's terms. *See, e.g., Earman Oil Co. v. Burroughs Corp.,* 625 F.2d 1291, 1294, n. 8, 1298 (5th Cir.1980) (applying Florida law); *Bruffey Contracting Co.,* 522 F.Supp. at 772 (applying Michigan law); *Aplications, Inc.,* 501 F.Supp. at 132–33 (applying California law); *Investors Premium Corp.,* 389 F.Supp. at 44 (applying South Carolina law); *Zugarek v. Walck,* 54 A.D.2d at 1075, 388 N.Y. S.2d at 757–58. In reaching the same conclusion, this Court has considered that the parties involved are merchants who had equal bargaining power with respect to the subject matter of their transaction. There is no suggestion that the plaintiffs were unaware of the significance of the disclaimer and integration clauses which were part of the contracts. *See Price Brothers Co. v. Philadelphia Gear Corp.,* 649 F.2d 416, 423 (3d Cir.), *cert. denied,* 454 U.S. 1099, 102

S.Ct. 674, 70 L.Ed.2d 641 (1981); *Aplications, Inc.,* 501 F.Supp. at 133. Because allowing plaintiffs to base an express warranty claim on language not present in the contract would be inconsistent with the integration clause, plaintiffs' express warranty claim fails to state a claim upon which relief may be granted and will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

■ The same result must be reached on the issue of implied warranties of fitness for a particular use, since such warranties have been expressly and adequately disclaimed. According to the statute, "[l]anguage to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' " Md. [Com.Law] Code Ann. § 2–316(2). Since the disclaimer of the implied warranty of fitness in the present contracts is in writing as required by the Code, the primary issue remaining to be addressed is whether the disclaimer of the implied warranty of fitness is conspicuous. A clause is conspicuous when it is "so written that a reasonable person against whom it is to operate ought to have noticed it." Md. [Com.Law] Code Ann. § 1–201(10). A sentence in the body of the contract is "conspicuous" if it is "in larger or other contrasting type or color." Md. [Com.Law] Code Ann. § 1–201(10). The decision as to whether a term is conspicuous is to be made by the Court. Md. [Com.Law] Code Ann. § 1–201(10).

The disclaimers in the present case are printed in larger type and in contrasting type, thereby satisfying either prong of the "conspicuous" requirement. A Maryland court has found a disclaimer conspicuous where the disclaimer language was separately underscored and a heading in capital letters demarcated the section. *Houck v. DeBonis,* 38 Md.App. 85, 99–100, 379 A.2d 765, 773 (1977), *cert. denied,* 28 Md. 765 (1978), *cert. denied,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977). Other courts in construing their Uniform Commercial Code have held that disclaimer clauses set forth

in a manner nearly identical to that of the contract at issue in this case, *i.e.,* in dark type and large capital letters, are conspicuous. *See, e.g., Earman Oil Co.,* 625 F.2d at 1294, n. 6, 1298 (applying Florida law); *Bruffey Contracting Co.,* 522 F.Supp. at 772 (applying California law); *Aplications, Inc.,* 501 F.Supp. at 132–33 (applying Michigan law); *Investors Premium Corp.,* 389 F.Supp. at 45 (applying South Carolina law); *Rudy's Glass Construction Co.,* 404 So.2d at 1089. The fact that a disclaimer is located on the reverse side of a contract, as in the present case, is also a factor to be considered in determining conspicuousness. However, Maryland courts have ruled that an otherwise conspicuous disclaimer located on the reverse side of a contract is not rendered inconspicuous if, as in the present case, the front of the document contains a noticeable reference to the terms and conditions which are located on the reverse side. *See, e.g., Houck,* 38 Md.App. at 98–100, 378 A.2d at 772–73. *See also Rudy's Glass Construction Co.,* 404 So.2d at 1089–99; *Childers & Venters, Inc. v. Sowards,* 460 S.W.2d 343 (Ky. 1970).

The Court has concluded that the disclaimers of the implied warranty of fitness in the contracts at issue here are conspicuous and are not rendered inconspicuous by their location on the reverse side of the contracts. In both the Equipment and the Maintenance Contracts, there is a reference in bold-faced capital letters to the terms and conditions of the contracts on the reverse side of the documents, located just above the signatures on the front side of the contracts. This reference to the reverse side of the contracts provided the plaintiffs with sufficient notice that the terms on the reverse side of the contracts were part of the agreement. *See Houck,* 38 Md.App. at 98–100, 379 A.2d at 772–73. *Accord Rudy's Glass Construction Co.,* 404 So.2d at 1089–90. Further, the disclaimer terms themselves were conspicuous and the Court has no difficulty concluding that plaintiffs ought to have noticed them. Finally, the language utilized to disclaim the implied warranty of fitness was sufficient. Both contracts contain disclaimer clauses which read: "EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OR REVERSE SIDE HEREOF." This language is more specific than the wording that the Maryland Commercial Law provides is adequate to exclude implied warranties of fitness. *See* Md. [Com.Law] Code Ann. § 2–316(2) (sufficient to state " 'There are no warranties which extend beyond the description on the face hereof.' "). Since the disclaimer provisions for the implied warranty of fitness comply with the statutory requirements for the exclusion of such implied warranties, the Court will grant the defendant's motion to dismiss the plaintiffs' implied warranty of fitness claims for failure to state a claim upon which relief may be granted. The plaintiffs will be left with their claim in Count II for breach of the implied warranty of merchantability, since the disclaimer provisions in the contracts, although conspicuous, fail to mention the word merchantability as is required under Maryland law. Md. [Com.Law] Code Ann. § 2–316(2).

▪ The defendant also moves to dismiss the fourth count in the complaint which alleges that the computer equipment and programs were negligently designed because they were insufficient to perform their contemplated tasks. In this count, the plaintiffs sought damages for the loss of value of the computer system and the attendant replacement costs resulting from this negligence. The defendant contends that the gravamen of Jaskey's action is a claim for breach of contract or breach of warranty, not a tort claim. It appears that the plaintiffs have dropped their negligent design claim because they did not contest or oppose defendant's motion to dismiss that claim. Even assuming that the plaintiffs have not abandoned their negligent design claim, the Court has determined that this claim must be dismissed pursuant to Rule 12(b)(6).

Since there does not appear to be authoritative Maryland precedent on this issue, the

**166**

Court must predict how the state's Supreme Court would rule. *See Barris v. Bob's Drag Chutes & Equipment Inc.,* 685 F.2d 94, 98 (3d Cir.1982). When a plaintiff characterizes a claim that a product was insufficient to perform its designated function as a tort claim, and alleges solely economic loss without any allegation of physical harm to a person or to property, courts have decided that such a claim sounds in contract not in tort. *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1174–75 (3d Cir.1981); *S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1376; *Cloer v. General Motors Corp.,* 395 F.Supp. 1070, 1071 (E.D.Tex.1975). A number of jurisdictions have held such economic losses are not recoverable in tort. *See Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 949 (11th Cir.1982) (applying Georgia law); *Kingston Shipping Co. v. Roberts,* 667 F.2d 34, 35 (11th Cir.1982); *Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524, 525–26 (7th Cir.1981) (applying Illinois law); *Office Supply Co. v. Basic/Four Corp.,* 538 F.Supp. 776, 791–91 (E.D.Wis.1982) (applying California law). *See also Battista v. Lebanon Trotting Ass'n,* 538 F.2d 111, 117 (6th Cir.1976) (addition of averment of malice did not change a contractual action into one in tort); *Investors Premium Corp.,* 389 F.Supp. at 45–46 (negligent design, manufacture, and installation claim held to restate breach of warranty claim). The Court is convinced that the Maryland courts would follow this approach. *Cf. Thomas v. Ford Motor Credit Co.,* 48 Md.App. 617, 429 A.2d 277 (1981) (a breach of express warranty is contractual, not tortious in nature and punitive damages cannot be awarded in a pure breach of contract case). According to the Court in *Pennsylvania Glass Sand,* injuries classified as economic loss which are not recoverable in tort are those where the product's value is diminished because of its qualitative inferiority and its failure to work for the general purposes for which it was sold. 652 F.2d at 1169. Warranty law, not tort law, protects the purchaser's expectation of suitability and quality. 652 F.2d at 1169. On the other hand, tort law has traditionally redressed injuries classified as

physical harm. 652 F.2d at 1170. Applying Pennsylvania law, the Court in *Pennsylvania Glass Sand* held that the physical injury to a product stemming from an allegedly hazardous defect in the product was the sort of physical injury to property that was compensable under tort law. 652 F.2d at 1175.

In Count IV of its complaint, Jaskey alleges that the computer system was "insufficient" to perform its function in accordance with Jaskey and Display Data's expectations. The plaintiffs do not allege that an unreasonably hazardous condition in the equipment caused physical harm to property or to a person, or physically damaged the equipment itself. The only claims of damage for the unsuitable computer system were for loss of value of the computer system and the accompanying replacement costs. Because Jaskey's claim in Count IV is solely for economic loss and not for physical harm to a person or property, the claim is actually in contract. As a result, Count IV which contains the plaintiffs' negligence claim will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.